## RAYMOND v. RAYMOND.

(Circuit Court of Appeals. Eighth Circuit. November 15, 1897.)

No. 889.

FEDERAL COURTS — JURISDICTION OF SUITS BETWEEN MEMBERS OF CHEROKEE NATION — CITIZENSHIP.

A white person, a citizen of the United States, who, by intermarriage with an Indian, becomes by adoption a member of the Cherokee Nation, does not thereby cease to be a citizen of the United States, but such adoption ousts the jurisdiction of the federal court over suits between the adopted member and other members of his tribe, and confers exclusive jurisdiction thereof on the tribal courts; and a subsequent unauthorized naturalization of such person does not affect his legal status.

Appeal from the United States Court of Appeals in the Indian Territory.

Suit for divorce by Eliza E. Raymond against Jesse B. Raymond.

William T. Hutchings, for appellant.

Thomas Marcum and S. S. Fears, for appellee.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree of the United States court of appeals in the Indian Territory (37 S. W. 202), which affirmed a decree of divorce rendered by the United States court in the Indian Territory for the Northern district thereof at its December term, 1895. At the threshold of the investigation, the appellant challenges the jurisdiction of the trial court upon the ground that both of the parties to the suit were members of the Cherokee Tribe of Indians, and that the courts of that tribe had exclusive jurisdiction over all suits and controversies between them. The appellee meets this challenge with the assertion that on October 2, 1894, she was naturalized by the United States court in the Indian Territory, pursuant to the provisions of section 43 of "An act to provide a temporary government for the territory of Oklahoma, to enlarge the jurisdiction of the United States court in the Indian Territory, and for other purposes," approved May 2, 1890 (26 Stat. c. 182, pp. 81, 99). These are the facts disclosed in the record which present the question of jurisdiction: The appellee, Eliza E. Raymond, was a white woman, and a citizen of the United States, and Jesse B. Raymond was an Indian by blood, and a member of the Cherokee Nation. On June 5, 1893, they intermarried, and lived together in the Cherokee Nation as man and wife. On August 28, 1893, a decree of divorce was rendered in a suit between them in the circuit court of the Canadian district, which was one of the established courts of the Cherokee Nation. On October 2, 1894, the appellee, Eliza E. Raymond, procured a certificate of naturalization from the United States court in the Indian Territory, under the provisions of section 43 of the act of May 2, 1890. On October 4, 1894, she brought a suit in equity against the appellant for a divorce and for alimony. The appellant answered, in effect, that the United States

83 F.—46

court had no jurisdiction of the parties or the suit, because the parties to it were both members of the Cherokee Nation, and that the decree of the Cherokee court was conclusive, and rendered the questions presented in the federal court res adjudicata. The trial court overruled these defenses, and entered a decree of divorce, and granted an allowance of alimony.

The Cherokee Nation exists within the territorial limits of the United States, is subject to their sovereignty, and is entitled to their protection against foreign states and powers. It is a distinct political society, capable of managing its own affairs and governing itself. It may enact its own laws, though they may not be in conflict with the constitution of the United States. It may maintain its own judicial tribunals, and their judgments and decrees upon the rights of the persons and property of members of the Cherokee Nation as against each other are entitled to all the faith and credit accorded to the judgments and decrees of territorial courts. It is a domestic, dependent nation. Cherokee Nation v. State of Georgia, 5 Pet. 1, 20; Crabtree v. Madden, 12 U. S. App. 159, 164, 4 C. C. A. 408, 410, and 54 Fed. 426, 428; Mehlin v. Ice, 12 U. S. App. 305, 5 C. C. A. 403, and 56 Fed. 12. The United States has maintained treaty relations with this tribe of Indians as such a nation for more than a century. Article 8 of the treaty of July 2, 1791 (7 Stat. 39, 40), provided:

"If any citizen of the United States, or other person not being an Indian, shall settle on any of the Cherokees' lands, such person shall forfeit the protection of the United States and the Cherokees may punish him or not, as they please."

It is not material to the present issue that this provision has been subsequently modified. It shows, as do subsequent treaties, that for more than a century this tribe of Indians has claimed and exercised, and the United States have guarantied and secured to it, the exclusive right to regulate its local affairs, to govern and protect the persons and property of its own people, and of those who join them, and to adjudicate and determine their reciprocal rights and duties. The preamble of the treaty of 1835 (7 Stat. 478) shows that one of the principal objects of the Cherokees in selling their lands east of the Mississippi was to secure for themselves a permanent home, "where they can establish and enjoy a government of their choice, and perpetuate such a state of society as may be most consonant with their views, habits, and condition." The fifth article of that treaty provides:

"The United States hereby covenant and agree that the land ceded to the Cherokee Nation in the foregoing article shall, in no future time, without their consent, be included within the territorial limits or jurisdiction of any state or territory. But they shall secure to the Cherokee Nation the right, by their national councils, to make and carry into effect all such laws as they may deem necessary for the government and protection of the persons and property within their own country belonging to their people or such persons as have connected themselves with them: provided, always, that they shall not be inconsistent with the constitution of the United States and such acts of congress as have been or may be passed regulating trade and intercourse with the Indians."

Article 13 of the treaty now in force, the treaty of July 19, 1866 (14 Stat. 799, 803), expressly stipulates:

"That the judicial tribunals of the nation shall be allowed to retain exclusive jurisdiction in all civil and criminal cases arising within their country in which members of the nation, by nativity or adoption, shall be the only parties, or where the cause of action shall arise in the Cherokee Nation, except as otherwise provided in this treaty."

The act of congress of May 2, 1890, which extends and determines the jurisdiction of the United States court in the Indian Territory, recognizes the rights secured by this treaty, and declares "that the judicial tribunals of the Indian nations shall retain exclusive jurisdiction in all civil and criminal cases arising in the country in which members of the nation by nativity or adoption shall be the only parties" (26 Stat. c. 182, p. 94, § 30); that "nothing in this act shall be so construed as to deprive any of the courts of the civilized nations of exclusive jurisdiction over all cases arising wherein members of said nations, whether by treaty, blood, or adoption, are the sole parties" (26 Stat. c. 182, p. 96, § 31); and "that any member of any Indian tribe or nation residing in the Indian Territory may apply to the United States court therein to become a citizen of the United States, and such court shall have jurisdiction thereof and shall hear and determine such application as provided in the statutes of the United States," but "that the Indians who become citizens of the United States under the provisions of this act do not forfeit or lose any rights or privileges they enjoy or are entitled to as members of the tribe or nation to which they belong" (26 Stat. c. 182, pp. 99, 100, § 43). This relation of the United States to these Indian tribes thus uniformly maintained by the treaties between them and the United States, and by the express enactment of this act of congress, leave no doubt that the United States court in the Indian Territory is expressly excluded from the right to hear and determine civil suits to which members of the Cherokee Nation are the sole parties. It is conceded that under the laws of that nation the appellee became a member of that tribe, by adoption, through her intermarriage with the appellant. It is settled by the decisions of the supreme court that her adoption into that nation ousted the federal court of jurisdiction over any suit between her and any member of that tribe, and vested the tribal courts with exclusive jurisdiction over every such action. Alberty v. U. S., 162 U. S. 499, 16 Sup. Ct. 864; Nofire v. U. S., 164 U. S. 657, 658, 17 Sup. Ct. 212. The counsel for the appellee seek to escape from this conclusion on the ground that the certificate of naturalization which she obtained from the United States court under section 43 of the act of May 2, 1890, deprived her of membership in the Cherokee Nation, and extended the jurisdiction of the federal court over any controversy she might have with any member of that tribe. But a citizen of the United States who becomes a member of one of the civilized Indian tribes by adoption does not thereby denationalize himself, and does not become an Indian. He remains a citizen of the United States. He still owes support and allegiance to the land of his birth, and is still entitled to her protection against the assaults of every foreign prince,

potentate, or power. U. S. v. Rogers, 4 How. 567, 572; City of Minneapolis v. Reum, 12 U. S. App. 446, 6 C. C. A. 31, and 56 Fed. 576. His adoption into one of these tribes has the effect to bestow on him the privileges and immunities of its members, and subjects him to the laws and usages of the tribe, but it has no greater effect. It deprives him of the right to appeal to the federal court for redress for civil injuries he sustains from members of the tribe of his adoption, but it confers upon him the right to have these wrongs redressed in the courts of his adopted tribe. His adoption into an Indian tribe has an effect upon his right to sue in the federal court analogous to that of a change of citizenship from one state to another. A native-born citizen of the state of Missouri has the right to the determination in a federal court of every controversy involving the requisite amount which he may have with a citizen of the state of Illinois. If, however, he becomes a citizen of the state of Illinois, he thereby surrenders that right, and is compelled to submit his controversies with the citizens of that state to its own judicial tribunals. Nor does he cease to be a citizen of the United States because he changes his residence from Missouri to Illinois. Nor would any certificate of naturalization from a federal court remove his disability to sue the citizens of his adopted state in the federal tribunals. Adoption into an Indian tribe has a like effect. It leaves the citizenship in the United States unaffected, but it ousts the jurisdiction of the federal court over controversies between the adopted member and the other members of his tribe, and confers exclusive jurisdiction thereof upon the tribal courts. Section 43 of the act of May 2, 1890, was never intended to empower the federal court in the Indian Territory to naturalize those who were already citizens. Its only purpose and sole effect was to empower that court to naturalize Indians; to naturalize those who were not, and never had been, citizens of the United States. The result is that the federal court in the Indian Territory is without power to naturalize a citizen of the United States who has been adopted as a member of one of the civilized Indian nations, and its certificate of such naturalization does not restore the ousted jurisdiction of the federal court over controversies between such a citizen and the members of a tribe which adopts him. The decree of the United States court of appeals in the Indian Territory and of the United States court in the Indian Territory must be reversed, with costs, and the case must be remanded, with directions to the trial court to dismiss it for want of jurisdiction; and it is so ordered.