Evelyn CONROY

v.

Kent FRIZZELL, etc., et al.

No. CIV75–5058.

United States District Court, D. South Dakota.

April 6, 1977.

Mario Gonzalez, Martin, S. D., for plaintiffs.

Charles H. Whiting, Rapid City, S. D., William F. Clayton, U. S. Atty., Sioux Falls, S. D., John C. Farrar, Rapid City, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

The above-entitled action may be broadly characterized as being based upon allegations that the various Defendants engaged in conspiracies, motivated by invidiously discriminatory animus directed at Plaintiff because of her race and her sex, to deprive Plaintiff of certain property rights she is alleged to have acquired during her marriage to Defendant Gerry Conroy, and which were allegedly made enforceable by virtue of a divorce decree and award of property entered in the Oglala Sioux Tribal Court.

Plaintiff and Defendant Gerry Conroy, both enrolled members of the Oglala Sioux Tribe, were married in 1938. They engaged in ranching during their marriage, and acquired about 1,700 acres of land while they were married. Most of the land acquired by the couple was and is land owned in trust by the United States of America for the benefit of Indian persons, although a small portion of the 1,700 acres was owned by individuals without any trust restrictions. In 1970 Plaintiff began a divorce action in the Oglala Sioux Tribal Court. Each of the regular tribal judges sitting at that time was disqualified from sitting on the case for various reasons not relevant here. Consequently, the Executive Committee of the Oglala Sioux Tribe met August 6, 1970 and appointed Harold Hanley, a non-Indian attorney ". . . on a cancel basis . . ." to act as tribal judge and preside over the Conroy divorce proceedings. *Oglala Sioux Tribal Executive Committee Resolution No. 70–24XB.*

On March 14, 1975 Judge Hanley entered a Decree granting Plaintiff a divorce from Gerry Conroy, ordering Gerry Conroy to convey certain described real property to Plaintiff, and awarding Plaintiff ownership of fifty head of cattle accumulated by the parties during their marriage, together with one-half of the increase of the fifty head of cattle. The Decree as just described was based on Findings of Fact and Conclusions of Law entered by Judge Hanley on March 14, 1975. These Findings and Conclusions, which were based upon a trial at which both parties were present and represented by counsel, included the following factual determinations:

That by the joint toil, work, effort, and forbearance of both Plaintiff and Defendant during 32 years of marriage they accumulated approximately 1,700 acres of land which at the present time is held in trust by the United States of America in the name of Gerry Conroy, Defendant herein.

\* \* \* \* \* \*

That by the joint toil, work, effort, and forbearance of both Plaintiff and Defendant during 32 years of marriage they accumulated 92 head of cattle.

The Tribal divorce proceedings which culminated in the March 14, 1975 Decree of Divorce and Findings of Fact and Conclusions of Law were fraught with confusion and disorder. On May 17, 1971 Judge Hanley entered an Order granting Plaintiff the use and possession of approximately 320 acres of land. In late 1971, Defendant Stanley D. Lyman, who was then the Superintendent of the Pine Ridge Agency of the Bureau of Indian Affairs, wrote a letter to Defendant Theodore Tibbetts, who was then Chief Judge of the Oglala Sioux Tribal Court. The letter asserted that Judge Hanley as Special Tribal Judge lacked authority to make an award of the trust land holdings of Gerry Conroy.

Thereafter, Judge Tibbetts apparently entertained a separate divorce action in Tribal Court between Plaintiff and Gerry Conroy, and entered a decree of divorce. On April 30, 1975 Defendant Dorothy Richards, who was then a Judge of the Oglala Sioux Tribal Court, entered an Order which purported to vacate Judge Hanley's decree of March 14, 1975 and uphold Judge Tibbetts' divorce decree.

In an apparent effort to alleviate the confusion created by the conflicting and inconsistent Tribal Court proceedings and orders, Plaintiff initiated an action in this Court (CIV75–5033) against the Oglala Sioux Tribe, Oglala Sioux Tribal Court, Theodore Tibbetts and Dorothy Richards. That action ended when each of the parties to it stipulated that Judge Hanley's Divorce Decree and Findings of Fact and Conclusions of Law entered March 14, 1975 were final Tribal Court Judgments, and that Judge Tibbetts' Divorce Decree and Judge Richards' Order upholding it were withdrawn and set aside. This Court thereupon permanently enjoined the Oglala Sioux Tribe, the Oglala Sioux Tribal Court, Theodore Tibbetts and Dorothy Richards from conducting any further proceedings or filing any further papers in regard to Plaintiff's divorce action in Tribal Court.

Despite all of the legal proceedings just described, Plaintiff has yet to realize any of the benefits which Judge Hanley's final Divorce Decree of March 14, 1975 was to have conferred upon her. As will be developed more fully below, the fact that Plaintiff has not been able to assume a legally recognized interest in the real property which she was awarded is primarily attributable to the failure of Defendant Gerry Conroy and the Bureau of Indian Affairs, through its local officers, to recognize any validity in Judge's Hanley's Order that Gerry Conroy convey trust lands to Plaintiff. Thus the root issue to be dealt with in these proceedings is the validity of a Tribal divorce decree which orders a division of real property held in trust by the United States.

On December 29, 1976, this Court entered an Order severing the issues in this case which relate to Plaintiff's rights in the real property from the issues which relate to Plaintiff's claims concerning the cattle. This severance was ordered primarily because it appears that the issue whether Plaintiff obtained enforceable rights in the real property by reason of Judge Hanley's decree should be resolved with finality before proceeding to trial on Plaintiff's various conspiracy claims. Indeed, the negative

of this issue has been a basic assertion in Motions to Dismiss filed by the respective Defendants herein. In a letter from this Court to counsel for all parties, filed December 29, 1976, briefs were requested on the following issues:

(A) Whether or not the initial appointment of H. R. Hanley by the Executive Committee of the Oglala Sioux Tribe to handle the Conroy divorce proceedings was a lawful appointment.

(B) Assuming *arguendo* that the appointment was lawful, whether the authority vested in him by said appointment existed up to and including March 14, 1975, when H. R. Hanley entered the decree in the Conroy divorce proceedings.

(C) Whether or not Evelyn Conroy ever had or does now have a property interest in trust lands held in the name of Gerry Conroy.

(D) Whether or not the Oglala Sioux Tribal Court has the power to order that title to or beneficial use of trust land be transferred.

(E) Whether or not the policy of Indian self-determination has augmented the powers of tribal government vis-a-vis federal officials in any way relevant for this case. (Cite authority, if any.)

(F) Whether the federal government's trust responsibility is somehow incompatible with the practice of transferring trust land pursuant to divorce decrees rendered in Tribal Court.

Counsel have duly submitted the requested briefs, and this Court wishes to note that these briefs have been of great assistance to the Court in its resolution of the unique and difficult issues presented herein. A hearing was held March 21, 1977, at which time the parties had an opportunity to present any evidence necessary to their respective legal contentions. At the hearing, counsel for all parties agreed that the issue of Plaintiff's rights in the real property could be resolved by the Court in a partial summary judg-

ment fashion. This Court has reviewed and considered the entire record herein, and has determined that no genuine issue of material fact exists, and that, for reasons that follow, Plaintiff is entitled as a matter of law to partial summary judgment on these issues.

## I. THE VALIDITY OF JUDGE HAN-LEY'S APPOINTMENT

### A. THE VALIDITY OF JUDGE HAN-LEY'S INITIAL APPOINTMENT

As noted above, Judge Hanley was appointed by the Executive Committee of the Oglala Sioux Tribe on August 6, 1970, on a "cancel basis."

Defendants' first contention on this issue is premised upon 25 C.F.R. § 11.3(d), which requires that judges on a court of Indian offenses be members of the tribe under the jurisdiction of the particular court. Defendants urge that, pursuant to 25 C.F.R. § 11.1(d), this requirement remains applicable to the Oglala Sioux Tribe "until otherwise directed" although the Tribe had adopted its own law and order code with provisions governing the qualifications of tribal judges.

In the Constitution and By-Laws of the Oglala Sioux Tribe, the Tribal Council is empowered to establish reservation courts, and define the duties and powers of those courts. *Article IV § 1(k)*; *Article V § 1.* The Constitution was approved by the Secretary of the Interior. The Oglala Sioux Tribal Council has enacted provisions of its Code which set up qualifications for Oglala Sioux Tribal Judges. *Oglala Sioux Tribal Council Resolution No. 65–7* (March 26, 1965), *Revised Code of the Oglala Sioux Tribe § 2.4.* These provisions of the Code were approved by the Superintendent of the Pine Ridge Agency of the Bureau of Indian Affairs. Under 25 U.S.C. § 1a, approval by the Agency Superintendent is tantamount to approval by the Secretary of the Interior. The judicial qualifications so enacted by the Oglala Sioux Tribal Council do not include a requirement that a tribal judge be a member of the tribe. Thus to that extent the duly enacted and approved tribal ordinance is inconsistent with Subchapter B Part 11 of Title 25 of the Code of Federal Regulations. Consequently, the tribal ordinance controls by virtue of 25 C.F.R. § 11.1(3), which reads:

> Nothing in this section shall prevent the adoption by the tribal council of ordinances applicable to the individual tribe, and after such ordinances have been approved by the Secretary of the Interior they shall be controlling, and the regulations of this part which may be inconsistent therewith shall no longer be applicable to that tribe.

In short, the fact that Judge Hanley was a non-Indian does not affect the validity of his appointment.

Defendants next contend that Judge Hanley's appointment was not valid under the applicable provisions of the Code of the Oglala Sioux Tribe. For this contention they point first to the following provisions of that Code:

> Each Judge, shall be appointed by a vote of two thirds of those voting at a meeting of the Tribal Council. Should a vacancy occur through death, resignation, or otherwise, for the position of Chief Judge, Associate Judge or Special Judge, between sessions of the Oglala Sioux Tribal Council, the Executive Committee is authorized to fill such vacancy or vacancies subject to the confirmation of the said Oglala Tribal Council, at their next session. *Revised Code of the Oglala Sioux Tribe, § 2.2 (1965).*

Judge Hanley was appointed by the Executive Committee. *Executive Committee Resolution No. 70–24XB*, which appointed Judge Hanley, provided that his appointment would be "on a cancel basis." This terminology was, in the judgment of this Court, explained in the certification attached to that resolution, which reads in part:

> . . . that said resolution is in full force and effect unless by legal enactment of the Council it shall be amended or rescinded.

The record does not reveal that the Tribal Council either amended or rescinded Judge Hanley's appointment. Thus it appears that there is an ambiguity in the Tribal government's construction of Tribal law relative to the Executive Committee's power to appoint a special judge. Any ambiguity in Tribal law should, in the first instance, be resolved by the Tribe. In the judgment of this Court, the Tribe has in fact resolved this ambiguity in favor of the validity of Judge Hanley's appointment. Three successive tribal administrations have affirmed the validity of Judge Hanley's appointment. His appointment was made and affirmed under the administration of President Gerald One Feather. The succeeding administration of President Richard Wilson, Sr., affirmed the appointment before this Court in 1975 in the stipulation entered into the case of *Conroy v. Oglala Sioux Tribe, et al.,* CIV75–5033. The current administration of President Albert W. Trimble has affirmed the validity of the appointment in *Executive Committee Resolution No. 76–10XB.* Former Tribal Judges Richards and Tibbetts, the only tribal officials who ever challenged the validity of the appointment, have affirmed the validity of Judge Hanley's appointment and his final disposition of the Conroy divorce case in the stipulation entered into before this Court in *Conroy v. Oglala Sioux Tribe, et al.,* CIV75–5033. Thus, in the judgment of this Court, the tribal authorities, to whom questions of Tribal law should be first addressed, have determined that the validity of Judge Hanley's appointment is not affected by the failure of the Tribal Council to formally ratify the Executive Committee's appointment.

 Defendants' next contention on this issue is that § 2.4b. of the Oglala Sioux Code was not complied with, and that therefore Judge Hanley's appointment is invalid under tribal law. § 2.4b. provides:

No person shall be considered for appointment as a Judge of the Oglala Sioux Tribal Court unless his qualifications and competence have been examined by the Tribal Law and Order Committee, and a written report on such examination has been filed with the Tribal Council.

Defendants do not actually dispute Judge Hanley's qualifications, but contend only that the lack of formal compliance with § 2.4b. renders Judge Hanley's appointment invalid in that the record required by tribal law does not exist. In the judgment of this Court, this contention is defeated by reason of the fact that the Tribe's governing body, through the processes detailed above, has repeatedly affirmed the validity of Judge Hanley's appointment. For the same reason this Court rejects Defendants' final contention that Judge Hanley, as a non-Indian jurist, could not be sufficiently familiar with tribal custom and tradition to competently preside over a tribal divorce proceeding. The Oglala Sioux Tribe, which would be the natural arbiter of such a contention, has apparently decided this question by affirming Judge Hanley's appointment.

## B. THE EFFECTIVENESS OF JUDGE HANLEY'S 1970 APPOINTMENT AS OF 1975

 Judge Hanley was appointed Special Tribal Judge August 6, 1970. His final decree was entered March 14, 1975. § 2.3 of the Oglala Sioux Tribal Code provides:

Each Judge shall hold office for a period of four years, unless sooner removed for cause, or by reason of abolition of the said office, or office vacated due to resignation or death.

Since the decree was entered more than four years after his appointment, Defendants urge that his power had lapsed and he lacked jurisdiction to finally dispose of the Conroy divorce matter. Former Tribal President Gerald One Feather testified that Judge Hanley was appointed as Special Judge for the Conroy divorce matter only. Thus Judge Hanley did not hear any other cases during his tenure as Special Tribal Judge. As noted above, his initial appointment was "on a cancel basis." These factors support the conclusion that Judge Hanley's appointment was unique in character and was to continue until the Conroy divorce case had been finally decided in Tribal Court. The Tribe's governing body has

obviously decided that this conclusion is correct under Oglala Sioux law. It has thus been established that the Tribe's intent was to appoint Judge Hanley for whatever period of time it took to dispose of the case for which he was appointed. Thus Defendants' reliance on the general principle that a judge's tenure cannot exceed that fixed by law, *see* 48 C.J.S. Judges § 22b, p. 970 (1947), is misplaced. In any event, this principle is one of Anglo-American law and does not necessarily control the appointment of tribal judges.

■ In summary, the issues surrounding the initial and continuing validity of Judge Hanley's authority are, as the federal defendants point out, primarily internal tribal matters which involve construction of tribal law. In this context, it should be noted that the record in this case does not reveal that Defendant Gerry Conroy disputed Judge Hanley's authority during the tribal divorce proceedings, and the time for appeal from Judge Hanley's decree has expired. *Revised Code of the Oglala Sioux Tribe* § 6.3(1) (1965). The Oglala Sioux Tribe has, before this Court and through Executive Committee Resolutions, repeatedly affirmed Judge Hanley's authority to dispose of the Conroy divorce matter. This Court sees no reason to disturb or overrule these tribal constructions of tribal law, and concludes that Judge Hanley possessed the necessary authority to hear and determine the matter of the Conroy divorce in Tribal Court.

## II. PLAINTIFF'S PROPERTY INTEREST IN LANDS HELD IN TRUST FOR GERRY CONROY BY THE UNITED STATES

### A. AUTHORITY OF TRIBAL COURT TO ORDER PROPERTY DIVISION

■ Both Plaintiff and Defendant Gerry Conroy are enrolled members of the Oglala Sioux Tribe. § 27 of the Oglala Sioux Tribal Code confers jurisdiction upon the Tribal Court for divorce cases between members of the Tribe. The existence of tribal jurisdiction over divorces between

tribal members is beyond dispute. *Cohen, Federal Indian Law* 137 (1940). Indeed, it appears probable that tribal courts are the only courts with jurisdiction to hear and determine a divorce such as the one involved in this case. *See Smith v. Temple*, 82 S.D. 650, 152 N.W.2d 547 (1967); *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Thus it seems clear that Plaintiff's rights as far as her divorce is concerned were adjudicated by a court of competent jurisdiction.

■ As noted above, the Tribal Court's findings of fact included the following:

That by the joint toil, work, effort, and forbearance of both Plaintiff and Defendant during 32 years of marriage they accumulated approximately 1,700 acres of land which at the present time is held in trust by the United States of America in the name of Gerry Conroy, Defendant herein.

It appears clear to this Court that, since the property was acquired by joint effort, Plaintiff herein did have and continues to have an interest in the property. 24 *Am. Jur.2d* 1057 *Divorce and Separation* § 928 (1966). The first question to be resolved in determining whether Plaintiff's property interest is enforceable in this action concerns the power of the Tribal Court to order Gerry Conroy to convey a quantity of real property to her as a means of effectuating her property rights.

■ The record reveals that the Tribal Court had subject matter jurisdiction of the divorce and personal jurisdiction over the parties. Under the Oglala Sioux Tribal Code, the Tribal Court is empowered to compel a husband at fault in a divorce action

. . . to make such suitable allowance to the wife for her support during her life . or for a shorter period as the Oglala Sioux Tribal Court may deem just, having regard to the circumstances of the parties respectively; and the Oglala Sioux Tribe may from time to time modify its orders in these respects. *Oglala Sioux Tribal Code* § 47 (1965).

Defendants correctly note that the general rule in Anglo-American law is that a Court lacks power to make a division of property in the absence of express statutory authority. *See Annotation: Propriety of Direction That Specific Property of Husband be Transferred to Wife as Alimony, or in Lieu of, or in Addition to, Alimony*, 133 A.L.R. 860 (1941). Defendants then argue that, since the Tribal Code provides no express authority to order a property division, Judge Hanley's Divorce Decree is of no effect insofar as it ordered Gerry Conroy to convey real property to Plaintiff.

In the judgment of this Court, Defendants' argument on this point incorrectly assumes that principles of Anglo-American law must be incorporated into the law developed in the Tribal Courts. The available law of the Oglala Sioux Tribe on this question is clearly contrary to the general rule of Anglo-American law relied upon by Defendants. In a memorandum opinion issued by the Oglala Sioux Tribal Appellate Court in the case of *Evelyn Conroy v. Theodore "Red" Tibbetts, Chief Judge of the Oglala Sioux Tribe*, it is squarely held

> . . . that the Oglala Sioux Tribal Court is vested with proper jurisdiction to order a division of trust land acquired during marriage between two enrolled members of the Oglala Sioux Tribe who are parties to a divorce action, *i. e.* the Conroy case. (Unpublished opinion at page 3, December 16, 1974.)

While the issue in the opinion just quoted from concerned the power of the Tribal Court to order a division of *trust* property, the Tribal Appellate Court's resolution of that issue necessarily assumes that a tribal divorce court possesses inherent power to order a division of the parties' property.

This Court lacks any general power to review and oversee the Tribal Courts in their resolution of questions concerning the authority and power of Tribal Courts. The only such review power which this Court does possess exists under the Indian Civil Rights Act, 25 U.S.C. § 1302, and this power is limited to ensuring the protection in tribal courts of certain basic constitutional rights. It seems clear that a claim that tribal courts have failed to follow a "majority rule" of Anglo-American law does not, standing alone, amount to a civil rights claim that might trigger this Court's narrow review powers under 25 U.S.C. § 1302. The noted commentator Felix S. Cohen has stated:

> The laws and customs of the tribe, in matters of contract and property generally (as well as on questions of membership, domestic relations, inheritance, taxation, and residence) may be lawfully administered in the tribunals of the tribe, and such laws and customs will be recognized by courts of state or nation in cases coming before these courts. *Cohen, Federal Indian Law*, 145 (1940).

*See generally Iron Crow v. Oglala Sioux Tribe*, 231 F.2d 89 (8th Cir. 1956).

In short, the question of the Oglala Sioux Tribal Court's power under tribal law to order a division of property in this case has been determined by the Tribe's highest court, and this Court has neither the inclination nor the power to review or overturn that determination by forcing concepts of Anglo-American law upon the Tribe.

## B. THE EFFECT OF THE TRUST STATUS OF THE LAND

It should be noted at the outset that Judge Hanley's Divorce Decree did not purport or attempt to effect, without more, a change in the title of the land involved. Instead, the decree ordered Gerry Conroy to convey the lands. A conveyance of trust lands requires that the particular Indian who holds beneficial title to the land apply for the Secretary of the Interior's approval of the contemplated conveyance. 25 U.S.C. § 483; 25 C.F.R. § 121.22(a). Gerry Conroy has not sought the Secretary's approval of the conveyance which Judge Hanley's Decree ordered him to make. Plaintiff alleges that Gerry Conroy's failure to seek the Secretary's approval is in furtherance of a conspiracy between Gerry Conroy and his brother Thomas, B.I.A. Realty Officer for the Oglala Sioux Tribe, to deprive Plaintiff of her property because of her sex. Of

course, this Court neither has nor intends to express any opinion on the merits of this conspiracy claim. In any event, Gerry Conroy has not acted in an effort to comply with Judge Hanley's Order, which he did not appeal from in Tribal Court.

■ The bulk of the real property which was acquired through the joint efforts of Plaintiff and her former husband during their marriage is trust property. Although the real property was acquired through the parties' joint efforts, all of it was acquired in the name of Defendant Gerry Conroy. If the land acquired by the parties was held in fee by Defendant Gerry Conroy, rather than in trust by the United States, there could be no question about the Tribal Court's authority to order a division of that property by ordering Gerry Conroy to convey a part of it, since

> [p]roperty relations of husband and wife, or parent and child, are likewise governed by tribal law and custom. *Cohen, Federal Indian Law* 137 (1940).

The lands in question are lands held in trust by the United States. Beneficial title of record is held in the name of Gerry Conroy. Pursuant to 25 U.S.C. § 348, the lands are held by the United States ". . for the sole use and benefit . . ." of Gerry Conroy. 25 U.S.C. § 348 also mandates that, at the end of the trust period, the United States is obligated to issue a patent ". . . in fee, discharged of said trust and free of all charge or incumbrance whatsoever" to Gerry Conroy or his heirs. Prior to the expiration of the trust period Gerry Conroy may apply for a fee patent. 25 U.S.C. § 483. 25 U.S.C. § 483 also authorizes Gerry Conroy to convey his trust land subject to the approval of the Secretary of the Interior or his duly authorized representative. Any attempted conveyance of the land without the Secretary's approval would be void. 25 U.S.C. § 348. Further, trust land may not be encumbered with any judgment against the holder of the beneficial title. *Mullen v. Simmons*, 234 U.S. 192, 34 S.Ct. 857, 58 L.Ed. 1274 (1914).

■ As noted above, 25 U.S.C. § 348 requires that any contemplated conveyance of trust property must be approved by the Secretary of the Interior. *See also* 25 C.F.R. § 121.22(a). A beneficial title holder's application for an approval of a contemplated conveyance triggers an administrative process outlined in 25 C.F.R. § 121.-23, which provides:

> Applications for the sale, exchange or gift of trust or restricted land shall be filed in the form approved by the Secretary with the agency having immediate jurisdiction over the land. Applications may be approved if, after careful examination of the circumstances in each case, the transaction appears to be clearly justified in the light of the long-range best interest of the owner or as under conditions set out in § 121.25(d).

25 C.F.R. § 121.25 provides:

> Those sales, exchanges, and gifts of trust or restricted lands specifically described in the following paragraphs (a), (b), (c), and (d) of this section may be negotiated, all other sales shall be by advertised sale, except as may be otherwise provided by the Secretary.
>
> \* \* \* \* \* \*
>
> (d) With the approval of the Secretary, Indian owners may convey trust or restricted land, for less than the appraised fair market value or for no consideration when the prospective grantee is the owner's spouse, brother, sister, lineal ancestor of Indian blood or lineal descendant, or when some other special relationship exists between the grantor and grantee or special circumstances exist that in the opinion of the Secretary warrant the approval of the conveyance.

The federal defendants herein urge that the above-described procedure is the only method by which the land in question may be conveyed to Plaintiff. This Court agrees with that contention. In so agreeing, this Court rejects Plaintiff's contention that 25 U.S.C. § 465 would authorize this Court to order the Secretary to transfer record beneficial title of her lands to her. § 465 is primarily an appropriations statute empowering the Secretary to purchase lands for

the benefit of Indian peoples. Construing § 465 in accordance with Plaintiff's contentions would stretch it far beyond its purpose as revealed by its plain wording.

The fact that § 465 is not applicable to the instant case does not, however, leave Plaintiff powerless to realize her property rights. Plaintiff's ownership of the lands in question may be formally recognized and established without doing violence to 25 U.S.C. § 483 and 25 C.F.R. § 121.21 *et seq.* All that is needed is for Gerry Conroy to apply for the necessary approval of the conveyance necessary to carry out the obligation imposed upon him by Judge Hanley's divorce decree. It appears to this Court that the fairly broad provisions of 25 C.F.R. § 121.25(d), *supra*, would empower the Secretary to approve the necessary conveyance.

■ The Tribal Court order was narrowly drawn in that it did not seek, in and of itself, to vest title in Plaintiff. The order was in the nature of equitable relief, compelling Gerry Conroy to transfer the land in question to her. This Court concludes that the trust status of the lands does not affect the validity of the Tribal Court order. In the landmark case of *Iron Crow v. Oglala Sioux Tribe*, 231 F.2d 89 (8th Cir. 1956), the Eighth Circuit Court of Appeals squarely held that the Oglala Sioux Tribe is empowered to impose a tax upon the use of land held in trust by the United States for the benefit of an individual Indian. The case of *Seneca Constitutional Rights Organization v. George*, 348 F.Supp. 51 (W.D.N.Y.1972) holds that Indian tribes possess the power of eminent domain through which they may condemn beneficial interest in trust lands.

If a tribe may impose a tax upon the use of trust lands, and if it possesses a right to condemn the beneficial title to trust lands, then its power to order parties to divide property, *see* § 22, *Oglala Sioux Tribal Code* (1965), is not abrogated solely by reason of the trust status of the property involved. The Eighth Circuit Court of Appeals stated in the case of *Raymond v. Raymond*, 83 F. 721 (8th Cir. 1897) that an Indian tribe

. . . may maintain its own judicial tribunals, and their judgments and decrees upon the rights of the persons and property of members of the [tribe] as against each other are entitled to all the faith and credit accorded to the judgments and decrees of territorial courts. 83 F. at 722.

Nothing has happened since 1897 to alter the validity of the above-quoted statement. Congress has passed no law altering the power of the tribal courts to adjudge the property rights of tribal members. In fact, since 1897 Congress has reinforced the principle of Indian self-determination and sovereignty through the passage of the Indian Reorganization Act (25 U.S.C. § 461 *et seq.*). The express legislative purpose of the Indian Reorganization Act was

. . . to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism. H.R. Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934).

*See also* 25 U.S.C. § 450. Under the principle of Indian self-determination, the power of the tribal courts to adjudicate the property rights of tribal members must be recognized. Gerry Conroy's beneficial interest in the real property in question is a property right which is subject to the judicial powers of the Oglala Sioux Tribal Court. The Oglala Sioux Tribal Court is thus empowered to order Gerry Conroy to convey his beneficial interest in trust property to his wife, whose efforts contributed to the acquisition of the property. As a member of the Oglala Sioux Tribe, Gerry Conroy is obligated to abide by and comply with tribal court orders. His failure to do so in this case, whatever his motive may be, has for many years deprived Plaintiff of property rights which have been adjudicated by a court of competent jurisdiction to be hers, and such refusal or failure by Defendant Conroy to so comply has caused Plaintiff to seek and obtain public welfare assistance for a considerable period of time. Accordingly, this Court will order Gerry Conroy to seek approval of the conveyance necessary to discharge the obligation imposed upon

him by Judge Hanley's divorce decree of March 14, 1975. Since the breadth of the United States' trust responsibility includes recognition of the principle of Indian self-determination, which in turn includes recognition of tribal courts' power over the persons and property of tribal members, the Secretary's due consideration of the tribal court's divorce decree in connection with Gerry Conroy's application for conveyance is in no way incompatible with that trust responsibility. The title which the United States as trustee holds in the real property has not been affected by Judge Hanley's decree, and will not be affected by the decision of this Court.

One final contention of the Defendants warrants consideration. In 1972, Plaintiff herein commenced an action in this Court against Gerry Conroy, Rogers Morton as Secretary of the Interior, and Louis Bruce as Commissioner of Indian Affairs. The action (CIV72–5045), sought a transfer of equitable title in one-half of Gerry Conroy's trust lands to Plaintiff herein. Jurisdiction was alleged to exist under 28 U.S.C. § 1331 and 25 U.S.C. § 345. In a memorandum opinion published at 369 F.Supp. 179 (D.S.D. 1973), this Court dismissed for lack of subject matter jurisdiction, treating the action as one seeking to involve the federal court in the property settlement aspect of a pending tribal court divorce action. The federal defendants herein have raised the argument that the 1972 action bars the instant case under the doctrine of *res judicata*.

 Jurisdiction over the instant case exists under 28 U.S.C. § 1343, in that Plaintiff alleges a cause of action under 42 U.S.C. § 1985(3). Thus this case has a separate jurisdictional base independent from that urged in the 1972 case. Thus the 1972 case cannot be *res judicata* as to this case. 46 Am.Jur.2d 656–657, *Judgments* § 500 (1969); *see also* *Fed.R.Civ.Proc. 41(b)*. Since the 1972 case much has taken place. After protracted litigation in the tribal courts, which was unduly complicated and delayed by interference from both tribal and federal officials, Plaintiff has received a valid court order from a court of competent jurisdiction. This order has yet to be executed and, as a consequence, Plaintiff has yet to receive the beneficial interest to which she is entitled. This Court sees no reason to delay Plaintiff's efforts to realize her rights any further than those efforts have already been delayed.

The foregoing shall constitute this Court's findings of fact and conclusions of law.