2015 S.D. 11

**ESTATE OF Wayne Kenneth DUCHENEAUX, Plaintiff and Appellant,**

v.

**Douglas DUCHENEAUX, Defendant and Appellee.**

No. 27086.

Supreme Court of South Dakota.

Argued Nov. 18, 2014.

Decided March 11, 2015.

Terry L. Pechota of Pechota Law Office, Rapid City, South Dakota, Brad A. Schreiber of The Schreiber Law Firm, Prof. LLC, Pierre, South Dakota, Attorneys for plaintiff and appellant.

Casey N. Bridgman, Clay A. Anderson, of Bridgman & Anderson Law Firm, Prof. LLC, Wessington Springs, South Dakota, Attorneys for defendant and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] The Estate of Wayne Kenneth Ducheneaux appeals the Sixth Judicial Circuit Court's denial of its motion for summary judgment and that court's dismissal of the Estate's action for lack of subject matter jurisdiction. The Estate argues Wayne Ducheneaux (the Decedent) lacked the requisite mental capacity, or was unduly influenced by Douglas D. Ducheneaux (Ducheneaux), when the Decedent transferred two quarter sections of Indian trust land located in Tripp County, South Dakota, to Ducheneaux. Although the Estate acknowledged the circuit court had no authority to directly return title of the trust land to the Estate, the Estate nevertheless asserts the circuit court had personal jurisdiction over Ducheneaux and, therefore, could have compelled Ducheneaux to make application to the Bureau of Indian Affairs to transfer the two quarter sections back to the Estate. We agree that the circuit court lacked jurisdiction over the parcels held in trust by the United States and affirm.

**Facts and Procedural History**

[¶ 2.] The Decedent was an enrolled member of the Rosebud Sioux Tribe and a lifelong resident of Tripp County, South Dakota. During his final years, the Decedent suffered from a number of adverse medical conditions. After suffering a fall in May 2011, the Decedent was admitted to the Winner Regional Hospital on May 18, 2011, and then transferred to the Winner Nursing Home on May 25, 2011. At this time, two of the Decedent's daughters—Darnel Swanson and Debra Calloway—jointly held power of attorney for their father. The Decedent modified his power of attorney on June 1, 2011, to include a third daughter, Dawn Daughters. The three daughters were unable to agree on a care plan for the Decedent, and after a disastrous meeting at the nursing home on June 13, 2011, the nursing home requested a guardian be appointed for the Decedent.

[¶ 3.] Ducheneaux filed for guardianship of his father in the Sixth Judicial Circuit Court on July 1, 2011. Ms. Swanson and Dana Mercer—another of the Decedent's daughters—instituted a guardianship proceeding in the same court on July 5, 2011. After the Decedent withdrew power of attorney from Ms. Swanson and Ms. Calloway on July 6, 2011, Ms. Daughters—who still had power of attorney— removed the Decedent from the nursing home on July 7, 2011. Thereafter, the Decedent resided with, and was cared for by, Ms. Daughters and Ducheneaux, the Decedent's son. The circuit court appointed Ducheneaux guardian of the Decedent and Gary Fenenga, CPA, as conservator of the Decedent. The Decedent passed away on November 18, 2011.

[¶ 4.] Prior to his passing, the Decedent transferred three quarters of land located in Tripp County to Ducheneaux, who is also an enrolled member of the Rosebud Sioux Tribe. Tripp County lies in the diminished portion of the original Rosebud Indian Reservation. *See general-*

*ly Rosebud Sioux Tribe v. Kneip,* 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977). Two of the quarters are held in trust by the United States. The Decedent transferred the first quarter [1] to Ducheneaux in July 2011, prior to Ducheneaux's appointment as guardian. The Decedent transferred the second [2] and third [3] quarters to Ducheneaux in August 2011, after Ducheneaux's appointment as the Decedent's guardian. The first parcel was owned and held by the Decedent and is not at issue in this appeal. The second parcel was held in trust by the United States for the Decedent. The third parcel was held in trust by the United States for the Rosebud Sioux Tribe, for the benefit of the Decedent.

[¶ 5.] In November 2011, the court-appointed conservator filed an action against Ducheneaux and Ms. Daughters seeking, among other things, to recover the transferred parcels. The circuit court dismissed that action in February 2012, due to the Decedent's death, but the matter was pursued again by the Decedent's personal representative in August 2012. The Estate introduced testimony from Teresa A. Marts, M.D., expressing her opinion that the Decedent was not competent to make important decisions at the time the Decedent transferred the parcels. The Estate moved for partial summary judgment, requesting the circuit court find that Ducheneaux did not, and never did, have an interest in the parcels that the Decedent transferred to him. The circuit court denied the Estate's request, determined that it lacked subject matter jurisdiction

over the parcels held in trust by the United States, and dismissed the action. The circuit court directed the entry of final judgment pursuant to SDCL 15–6–54(b).

[¶ 6.] The Estate raises one issue in this appeal: Whether the circuit court possessed the equitable power to compel Ducheneaux to make application to the Secretary of the Interior for the transfer of Indian trust property to the Estate.

### Standard of Review

[¶ 7.] A challenge to the subject matter jurisdiction of a court is a question of law that we review de novo. *State ex rel. LeCompte v. Keckler,* 2001 S.D. 68, ¶ 6, 628 N.W.2d 749, 752. As such, "this Court gives no deference to the circuit court's conclusions of law." *Cable v. Union Cnty. Bd. of Cnty. Comm'rs,* 2009 S.D. 59, ¶ 19, 769 N.W.2d 817, 825. Because "[s]ubject matter jurisdiction is conferred solely by constitutional or statutory provisions[,] . . . [it] can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ." *Id.* ¶ 20, 769 N.W.2d at 825 (quoting *Application of Koch Explor. Co.,* 387 N.W.2d 530, 536 (S.D.1986)) (internal quotation marks omitted).

### Analysis and Decision

[¶ 8.] The Estate argues the Decedent was not mentally competent to transfer land to Ducheneaux and that Ducheneaux exerted undue influence on the Decedent in order to prompt the transfers. The Estate does not argue the circuit

1. This parcel is described as the Northeast Quarter (NE1/4) of Section Nineteen (19), Township Ninety-seven (97) North, Range Seventy-seven (77) West of the 5th P.M., Tripp County, South Dakota.

2. This parcel is described as the Northwest Quarter (NW1/4) of Section Thirty-four (34), Township Ninety-seven (97) North, Range

Seventy-seven (77) West of the 5th P.M., Tripp County, South Dakota.

3. This parcel is described as the Northwest Quarter (NW1/4) of Section Fourteen (14), Township Ninety-seven (97) North, Range Seventy-eight (78) West of the 5th P.M., Tripp County, South Dakota.

court had jurisdiction over the trust land itself. Rather, the Estate argues that, because the circuit court had personal jurisdiction over Ducheneaux, the circuit court could have compelled Ducheneaux to "make application to the Bureau of Indian Affairs to return the two quarters of trust land to the estate." In essence, the Estate suggests the circuit court did not need to have subject matter jurisdiction over the trust land in order to effect its transfer back to the Estate. Because the circuit court did not decide this case on its merits, the ultimate question of whether the parcels at issue should be transferred back to the Estate is not properly before us. On the jurisdictional question, we agree with the circuit court and affirm.

[¶ 9.] It is correct that courts have long recognized that "[a] court of equity, having authority to act upon the person, may indirectly act upon real estate in another state, through the instrumentality of this authority over the person." *Fall v. Eastin*, 215 U.S. 1, 8, 30 S.Ct. 3, 6, 54 L.Ed. 65 (1909).

[W]hen the subject matter of a suit in a court of equity is within another state or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted. In such case, the decree is not of itself legal title, nor does it transfer the legal title. It must be executed by the party, and obedience is compelled by proceedings in the nature of contempt, attachment, or sequestration.

*Id.* at 11, 30 S.Ct. at 8. However, this exception to the normal territorial limitations of a court is limited and well defined. *Id.* at 8, 30 S.Ct. at 6. "[T]he power to convey must not be a power given by such foreign court, but a power conferred either by statute or by act of the holder of the legal title...." *Joy v. Midland State Bank*, 26 S.D. 244, 251, 128 N.W. 147, 149 (1910). Here, the United States holds legal title to the trust land at issue. The Estate argues this doctrine is applicable because the Estate asks only that Ducheneaux be compelled to make the appropriate applications to the Bureau of Indian Affairs for transfer of the trust land. Because the United States would still retain its usual power to grant or deny the application, *see* 25 C.F.R. § 152.23 (2014) (requiring federal approval for any contemplated "sale, exchange or gift of trust or restricted land"), and because the circuit court had personal jurisdiction over Ducheneaux, the Estate concludes such a compulsion is within the power of the circuit court.

[¶ 10.] There is no contested issue that the circuit court had personal jurisdiction over Ducheneaux. However, the United States Supreme Court has recognized two additional restrictions "to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority may be pre-empted by federal law. Second, it may unlawfully infringe 'on the right of reservation Indians to make their own laws and be ruled by them.'" *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142–43, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980) (citations omitted) (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959)). Furthermore, South Dakota's Constitution expressly acknowledges the supremacy of the federal government in matters pertaining to Indian lands. It states, in part:

That we, the people inhabiting the state of South Dakota, do agree and declare that we forever disclaim all right and title to the unappropriated public lands lying within the boundary of South Dakota, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States; and said *Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States....*

S.D. Const. art. XXII, § 2 (emphasis added).[4] Thus, the inquiry cannot end with a determination of personal jurisdiction. Rather, we must ask whether granting the Estate's request and thereby indirectly affecting the disposition of Indian trust lands: (1) has been preempted by Congress, (2) would interfere with tribal sovereignty, or (3) would otherwise disrupt Congress's *absolute* jurisdiction and control over the two quarter sections of land at issue here. Therefore this case is controlled by state and federal constitutional principles not relevant to, or considered by, cases like *Fall v. Eastin* or *Joy v. Midland State Bank*—neither of which involved a state's ability to affect title to real property located within Indian Country.

 [¶ 11.] After properly framing the issue, it is apparent federal legislation in this area has preempted the circuit court from exercising whatever equitable power it might have otherwise had over

Ducheneaux. The power of preemption derives from the Supremacy Clause, U.S. Const. art. VI, § 2, and "occurs when Congress ... expresses a clear intent to preempt state law, ... where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, ... or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) (citations omitted). "The tradition of Indian sovereignty over the reservation and tribal members must inform the determination whether the exercise of state authority has been preempted by operation of federal law." *White Mountain Apache Tribe*, 448 U.S. at 143, 100 S.Ct. at 2583. This determination "is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake[.]" *Id.* at 145, 100 S.Ct. at 2584. The foregoing analysis is not required, however, when an act of Congress clearly expresses a constraint on state authority. *See Williams*, 358 U.S. at 220, 79 S.Ct. at 271 ("Essentially, *absent governing Acts of Congress*, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." (emphasis added)).

[¶ 12.] In this case, Congress has clearly indicated a barrier to state jurisdiction. In 1953, in furtherance of a now-defunct

---

4. The United States Supreme Court had the opportunity to construe this Constitutional clause in *United States v. Rickert*, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532 (1903). A South Dakota county attempted to sell fixtures and personal property owned by an Indian for nonpayment of taxes imposed on those fixtures and property, which were located upon trust land. *Id.* at 433, 23 S.Ct. at 478–79. The county argued that it was not affecting title to the trust land itself because it classified fixtures and other items as personal property. *Id.* at 434, 23 S.Ct. at 479. In rejecting this restrictive interpretation of the limitations of South Dakota article XXII, § 2, the Court said the state could not do indirectly what it was prohibited to do directly. *Id.* at 439–41, 23 S.Ct. at 481–82.

policy of assimilating the various Indian populations around the nation, "Congress ... provided a method whereby States [could] assume jurisdiction over reservation Indians[.]" *McClanahan v. State Tax Comm'n of Ariz.*, 411 U.S. 164, 177, 93 S.Ct. 1257, 1265, 36 L.Ed.2d 129 (1973) (citing 25 U.S.C. § 1322(a) (1968)). A state that met certain requirements was permitted, by Congress, to assert "jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action[.]" 25 U.S.C. § 1322(a) (2012). Despite such broad-reaching jurisdiction, however, Congress expressly withheld from those states the jurisdiction "to adjudicate, in probate proceedings or otherwise, the ownership or *right to possession* of [Indian property held in trust by the United States] or *any interest therein.*" 28 U.S.C. § 1360(b) (2012) (emphasis added). South Dakota rejected the assumption of greater responsibility for, and broader jurisdiction over, the Indian population of this State. *See generally Rosebud Sioux Tribe v. South Dakota*, 900 F.2d 1164 (8th Cir.1990). The jurisdiction of a South Dakota court, therefore, is subject to even greater restriction than that expressed in 28 U.S.C. § 1360(b).

[¶ 13.] The Supreme Court of Montana has previously considered 28 U.S.C. § 1360(b) in a related context. *In re Marriage of Wellman*, 258 Mont. 131, 852 P.2d 559 (1993). *Wellman* involved divorce proceedings between a wife, who was a member of the Blackfeet Tribe, and a husband, who was not an Indian. The wife filed for divorce in a Montana district court, and the husband asked that court for an equitable distribution of marital assets, including 4,000 acres of Indian trust land—held by the United States for the benefit of the wife—accumulated during the marriage.

In affirming the Montana district court's dismissal for lack of subject matter jurisdiction over the trust land, the Montana Supreme Court said, "In light of [the] statutory circumscription [of 28 U.S.C. § 1360(b),] even where the state has assumed jurisdiction, we infer the complete absence of Congressional intent to authorize or allow a state that has *not* assumed jurisdiction to adjudicate Indian trust land in any way whatsoever." *Wellman*, 852 P.2d at 564. We agree. If those few states that have been granted broader civil jurisdiction by Congress are not empowered to adjudicate the right to possession of Indian trust land, it is difficult to imagine that Congress intended for the rest of the states—including South Dakota and Montana—to hold such power.

[¶ 14.] The United States Supreme Court decided a similar case over a century ago. In *Kalyton v. Kalyton (Kalyton I )*, 45 Or. 116, 74 P. 491 (1903), *reh'g denied, Kalyton v. Kalyton (Kalyton II )*, 45 Or. 116, 78 P. 332 (1904), *rev'd, McKay v. Kalyton*, 204 U.S. 458, 27 S.Ct. 346, 51 L.Ed. 566 (1907), the Oregon Supreme Court decided a case that involved a dispute between purported heirs of a member of the Cayuse Tribe, each of whom claimed the right to possession of trust land allotted to the decedent. Upon recognizing the plaintiff as the legitimate daughter of the decedent, the Oregon Supreme Court held the plaintiff was "entitled to the possession" of the trust property. *Id.* at 494–95. The defendants petitioned for rehearing, arguing the state court lacked jurisdiction over the trust land. *McKay*, 204 U.S. at 460, 27 S.Ct. at 347. The Oregon Supreme Court denied the petition, deciding that the "determination by a state court of the heirs of a deceased Indian allottee is not ... an interference with the primary disposal of the soil, but is in aid of the [federal] government in protecting the

rights of its cestui que trust." *Kalyton II*, 78 P. at 333. The United States Supreme Court held the Oregon state courts lacked jurisdiction, rejecting "[t]he suggestion made in argument that the controversy . . . presented involved the mere possession, and not the title, to the allotted land, . . . since the right of possession asserted of necessity is dependent upon the existence of an equitable title in the claimant . . . to the ownership of the allotted lands." *McKay*, 204 U.S. at 469, 27 S.Ct. at 350. In other words, the United States Supreme Court has already held that "a decree as to the right of possession would . . . interfere with the title or trust interest of the United States." *See id.* at 460, 27 S.Ct. at 347.

[¶ 15.] Aside from 28 U.S.C. § 1360(b), we find guidance in *O'Connell v. Hamm*, 267 N.W.2d 839 (S.D.1978). In that case, this Court was asked to impose a constructive trust on trust land held by the United States. Although the land at issue was located within the borders of the Pine Ridge Indian Reservation, as opposed to external trust land, our conclusion in that case is relevant here.

> There has been no showing that any available tribal and federal remedies have been exhausted by the plaintiffs. Because the parties involved are enrolled Indians and the land involved is reservation trust land, we have no reason to believe that any judgment by this court would be enforceable. We have no power to affect title to the land involved. We may not adjudicate the disposition of property over which we have no control; such disposition is certainly beyond our jurisdiction.

*Id.* at 842. The same rationale applies to trust land within a disestablished reservation or outside of a diminished reservation—either case falls within the status of "Indian Country" under 18 U.S.C. § 1151.

See *DeCoteau v. Dist. Cnty. Ct. for 10th Jud. Dist.*, 420 U.S. 425, 428, 95 S.Ct. 1082, 1085, 43 L.Ed.2d 300 (1975) ("It is common ground here that Indian conduct occurring on the trust allotments is beyond the State's jurisdiction, being instead the proper concern of tribal or federal authorities.").

[¶ 16.] Even if we were to conclude the circuit court's decision on the merits would be given full faith and credit (at least in federal court), we are convinced the involvement of the circuit court in hearing the merits of the Estate's claim would "stand[ ] as an obstacle to the accomplishment and execution of the full objectives of Congress." *See La. Pub. Serv. Comm'n*, 476 U.S. at 368–69, 106 S.Ct. at 1898. Such a result would ultimately invade upon Congress's absolute jurisdiction and control over Indian lands: if no state-court-ordered application is entered herein, there will not be a subsequent transfer by the Bureau of Indian Affairs. Although the requested remedy is not a constructive trust, but rather an order compelling Ducheneaux to make application for the transfer of the disputed properties, the result, in either case, is ultimately an interference with tribal and federal control over Indian trust lands. *See McKay*, 204 U.S. at 469, 27 S.Ct. at 350.

[¶ 17.] In asserting that "[c]ourts have used their personal jurisdiction over a defendant to require that trust land, over which the court had no jurisdiction to divide directly, be conveyed personally by defendant pursuant to court order[,]" the Estate relies on *Conroy v. Frizzell (Conroy I )*, 429 F.Supp. 918 (D.S.D.1977), *aff'd*, *Conroy v. Conroy (Conroy II )*, 575 F.2d 175 (8th Cir.1978). *Conroy I* involved a divorce action between two enrolled members of the Oglala Sioux Tribe. 429 F.Supp. at 920. The wife filed for divorce in the Oglala Sioux Tribal Court, which

granted the divorce and awarded her, among other things, roughly half of 1,700 acres of land held in trust by the United States for the benefit of the husband. *Conroy II*, 575 F.2d at 176–77. The wife was subsequently unable to enforce the judgment and turned to the federal district court for the District of South Dakota. *Id.* at 177. The district court first determined the tribal court had jurisdiction to enter the order—i.e., the district court determined the judgment was valid—and then enforced the tribal court judgment by ordering the husband to make the appropriate application to the Secretary of the Interior for the transfer of the trust land. *Conroy I*, 429 F.Supp. at 927–28. The United States Court of Appeals for the Eighth Circuit affirmed. *Conroy II*, 575 F.2d at 184.

[¶ 18.] The Estate's reliance on these cases is misplaced. According to the Estate, *Conroy II* "makes it clear that any court with jurisdiction over a defendant can compel the person to make application to transfer trust property belonging to others." We see no such holding applicable to state courts. A careful reading of both cases leads to a decidedly different conclusion than that espoused by the Estate. The district court explicitly and deliberately stated that the case before it was "not a case on its merits, that is, going into whether or not there was justification for [the property division]." *Id.* at 179 (quoting from the transcript of a hearing held by the district court on March 21, 1977). On appeal, the question of whether or not the district court had the power to compel the husband to apply for the transfer of the trust property was not heard by the Eighth Circuit Court of Appeals; the only questions appealed to that court involved whether or not the tribal court had

proper jurisdiction to issue the underlying divorce decree. In affirming *Conroy I*, the Eighth Circuit itself said, "We do not here paint with a broad brush. . . . We rule narrowly upon the property division made. . . ." *Id.* at 183. Thus, the cornerstone of *Conroy I* and *II* is not that the federal courts had personal jurisdiction over the defendant—although such jurisdiction was obviously one requirement of those courts wielding equitable compulsion against the defendant—rather, the emphasis of those cases is on first identifying a valid judgment from a court of competent jurisdiction. The existence of a valid judgment is a prerequisite to the enforcement of that judgment—by equitable compulsion or otherwise.[5]

[¶ 19.] In reading *Conroy II* to be "directly on point[,]" the Estate ignores the predicate question of whether or not the circuit court was capable of originating a valid judgment on the merits of this case. Instead, the Estate suggests that if a federal court has jurisdiction to enforce a valid tribal court judgment—as in *Conroy I* and *II*—then a state court has jurisdiction to adjudicate the right to possession of Indian trust land, 28 U.S.C. § 1360(b) apparently notwithstanding. This non sequitur conflates the inherent difference between originating and enforcing a judgment. Consequently, we disagree with the Estate's claim that this difference is "not a relevant distinction." Instead, we again agree with the Supreme Court of Montana: "*Conroy [II]* provides authority for a *tribal* court to apportion beneficial interests in trust land in conjunction with a dissolution action between tribal members. It has no bearing on the issue of *state* court jurisdiction over Indian trust land." *Wellman*, 852 P.2d at 564–65. In asking this Court to command the circuit court to

---

**5.** If this were not true, the Eighth Circuit could have saved itself eight pages of analysis by simply recognizing the district court had personal jurisdiction over the defendant.

actually adjudicate the right to possession of Indian trust land, the Estate not only paints *Conroy II* with a broad brush, it paints a picture altogether different than the Eighth Circuit's.

## Conclusion

[¶ 20.] Congress has preempted state court jurisdiction over the disposition of Indian trust property, and the United States Supreme Court has made clear that adjudicating the right to possession of Indian trust lands interferes with the interests of the United States. While the Estate's requested remedy is admittedly not an attempt to directly determine ownership of the land at issue here, a trial on the merits—in which the Estate would argue Ducheneaux improperly became beneficiary of the two quarter sections at issue—would necessarily center on an argument that the Estate is entitled to a return of the land transferred to Ducheneaux. In other words, while a trial on the merits would not run afoul of 28 U.S.C. § 1360(b) to the extent that it would not be an attempt to adjudicate the *ownership* of Indian trust land, it would violate that section by virtue of necessarily adjudicat-

ing the *right to possession* of land held in trust by the United States. Because asserting jurisdiction in this case would reach beyond wielding equitable powers to merely enforce a valid judgment issued by a court of competent jurisdiction, we agree the circuit court did not have jurisdiction over the subject matter of this case. Consequently, we affirm.[6]

[¶ 21.] ZINTER and SEVERSON, Justices, and MYREN, Circuit Court Judge, and KONENKAMP, Retired Justice, concur.

[¶ 22.] MYREN, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.

[¶ 23.] KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.

---

6. The specter is raised that if the circuit court cannot act, the Estate may be left without a legal remedy for a decision on the merits concerning the claims of mental capacity and undue influence. The limited nature of the record prevents us from determining whether another court—be it an administrative court of the Bureau of Indian Affairs, a tribal court, or a federal court of the United States—may have jurisdiction. Such issue was not briefed to this Court.