#28068-aff in pt & rev in pt-JMK & LSW
**2018 S.D. 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ESTATE OF WAYNE KENNETH
DUCHENEAUX, Deceased.

***************************************

ESTATE OF WAYNE KENNETH
DUCHENEAUX,                                             Plaintiff and Appellee,

     vs.

DOUGLAS D. DUCHENEAUX,                            Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TRIPP COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN L. BROWN
Judge

* * * *

BRAD A. SCHREIBER
Pierre, South Dakota

TIMOTHY M. ENGEL of
May, Adam, Gerdes & Thompson, LLP
Pierre, South Dakota                          Attorneys for Estate of Wayne
                                              Kenneth Ducheneaux, plaintiff
                                              and appellee.

MARK MORENO of
Moreno, Lee & Bachand P.C.                    Attorneys for Dawn Daughters,
Pierre, South Dakota                          interested person and appellee.

CASEY N. BRIDGMAN of
Bridgman & Anderson Law Firm                  Attorneys for Douglas D.
Wessington Springs, South Dakota              Ducheneaux, defendant and
                                              appellant.

* * * *

CONSIDERED ON BRIEFS
OCTOBER 2, 2017
OPINION FILED **03/14/18**

#28068

KERN, Justice, and WILBUR, Retired Justice

**[¶1.]        Justice Kern delivers the opinion of the Court on Issues One through Four.  Retired Justice Wilbur delivers the opinion of the Court on Issue Five.**

**[¶2.]        KERN, Justice, writing for the Court on Issues One through Four.**

[¶3.]        Douglas Ducheneaux appeals from a court order compelling him to return real property transferred to him by his late father.  He also appeals from a jury verdict requiring him to pay general and punitive damages to his father's estate.  Ducheneaux alleges that the circuit court made numerous errors throughout the proceedings, including the denial of his motion for a new trial.  He also contends the court erred by requiring him to pay the Estate's attorney fees.  We reverse and remand on the issue of attorney fees, but we affirm in all other respects.

## Facts and Procedural History

[¶4.]        A detailed summary of the facts underlying this case are outlined in *Estate of Ducheneaux v. Ducheneaux*, 2015 S.D. 11, 861 N.W.2d 519.  Wayne Ducheneaux died testate on November 18, 2011, leaving six children.  On January 6, 2009, Wayne executed a will dividing his estate equally among his five daughters[1] while "intentionally making no provisions . . . for [his] son Douglas Ducheneaux," with whom he was estranged.  Prior to his death, Wayne owned property in Tripp County, South Dakota, including: five quarters of land, two of

---

1.    With the exception of a 2006 Chrysler 300, which the will specifically devised to Wayne's daughter Darnel Swanson.

which were on tribal trust lands; two vehicles; a certificate of deposit; and a checking account.

[¶5.] In May 2011, Wayne was placed in a nursing home for a few weeks after his health deteriorated. In June, Ducheneaux visited Wayne in the nursing home and resumed their relationship. Wayne left the nursing home to reside intermittently with Ducheneaux and his daughter, Dawn Daughters. On July 1, 2011, Ducheneaux petitioned the court for appointment as Wayne's guardian.

[¶6.] Between July and August 2011, Wayne deeded three quarters of land to Ducheneaux. In July, while the petition for guardianship of Wayne was pending, Wayne transferred the first parcel, a lifetime Tribal Land Enterprise assignment from the Rosebud Sioux Tribe to Ducheneaux. The second and third transfers occurred shortly thereafter. These included the "home quarter," which was fee land located in Tripp County, and a quarter of land held in trust by the United States. Additionally, Wayne allegedly gifted a new pickup truck valued at $31,890 to Ducheneaux and a 2006 Chrysler 300 to Daughters.

[¶7.] That summer, Wayne also penned four documents dated July 16, August 2, August 11, and August 23, 2011, that Ducheneaux alleges were holographic wills. Each writing significantly revised how Wayne's assets should be distributed. The last writing executed on August 23 instructed that all five quarters of land owned by Wayne—including those parcels already transferred to Ducheneaux—be sold and the proceeds divided equally among his six children. Further, the document indicated that Wayne wanted Ducheneaux to be his personal representative.

[¶8.] On August 24, 2011, a hearing was held on Ducheneaux's petition to become guardian, and on September 6, 2011, Ducheneaux was made guardian while Gary Fenenga was appointed Wayne's conservator. In September 2011, Fenenga sued Ducheneaux and Daughters, seeking in part to have the truck given to Ducheneaux returned to Wayne's estate. On November 18, 2011, Wayne passed away, and the suit was dismissed. On December 29, 2011, Daughters filed a petition for formal probate of the estate. Daughters attached to her petition copies of the four holographic writings allegedly written by Ducheneaux and four affidavits prepared by Daughters describing her knowledge of each of the writings. On February 21, 2012, the circuit court appointed attorney Jack Gunvordahl as the Estate's personal representative.

[¶9.] On July 10, 2012, the U.S. Department of the Interior held a probate hearing to determine how Wayne's tribal trust and restricted property assets should be distributed. Because the holographic writings did not comport with the attestation requirements of 25 C.F.R. § 15.4, the Department held that the 2009 will controlled. Regardless, the Department held the five quarters of land described in the will were "not a part of the inventory of property submitted by the Agency, subject to this jurisdiction."[2] Ducheneaux submitted a petition for rehearing, requesting that the Department determine "the testamentary intent of decedent and carry out his wishes." The Department denied the petition.

---

2. We assume this is because the Department lacked jurisdiction over the fee land and because the two tribal quarters were transferred by Wayne to Ducheneaux prior to Wayne's death.

[¶10.]     In August 2012, the Estate sued Ducheneaux and Daughters. With respect to Ducheneaux, the Estate alleged that Wayne was not competent to transfer the pickup and three quarters of land to Ducheneaux, that Ducheneaux exercised undue influence over Wayne, and that Ducheneaux converted Wayne's property and violated his confidential relationship with Wayne in doing so. The Estate also sought punitive damages, alleging Ducheneaux engaged in fraudulent behavior such as attempting to personally collect the insurance proceeds for flood damage to Wayne's home and by selling the truck Wayne allegedly gave him without giving notice to the Estate. Daughters returned the vehicle allegedly transferred to her by Wayne, and the Estate dismissed its claim against her. On November 20, 2012, Daughters moved to intervene as an additional party plaintiff, and on December 3, 2012, the circuit court granted the motion.

[¶11.]     Ducheneaux and the Estate filed cross-motions for partial summary judgment. The Estate moved for summary judgment on whether Ducheneaux ever possessed a valid interest in the parcels Wayne transferred to him, while Ducheneaux argued that the court lacked subject-matter jurisdiction over land held in trust by the United States. In response, the Estate agreed that the circuit court lacked subject-matter jurisdiction over the trust property. However, it attempted to circumvent this requirement by requesting that the court compel Ducheneaux— over whom the court possessed personal jurisdiction—to make application to the Bureau of Indian Affairs to return the two quarters of trust land to the Estate. The court refused to do so, holding that it lacked subject-matter jurisdiction over parcels held in trust by the United States and dismissing that portion of the Estate's

complaint. We affirmed the circuit court's dismissal in *Ducheneaux*, 2015 S.D. 11, ¶ 20, 861 N.W.2d at 527, holding that although exercising personal jurisdiction over Ducheneaux in this manner would not "directly determine ownership of the land," a trial on the merits would nevertheless violate 28 U.S.C. § 1360(b). We explained that the circuit court would be adjudicating the right to possess trust land, thereby interfering with the interests of the United States. *Id.*

[¶12.] On September 8, 2015, the Estate moved to consolidate the civil action with the probate case. At a hearing held on October 28, 2015, the circuit court denied the motion, reasoning that a ruling on the probate issues in Ducheneaux's favor would resolve any claim the Estate had against Ducheneaux. On March 18, 2016, the Estate again moved to consolidate the cases in a motion largely identical to the first. During the motions hearing on March 24, 2016, Ducheneaux argued that the holographic wills entitled him to be personal representative of the Estate. Ducheneaux contends on appeal that consolidating the civil action—which had been brought by the court-appointed personal representative of the Estate—with the probate case effectively defeated his claim to be personal representative in front of a jury. The plaintiffs had agreed to proceed with a bench trial to avoid any concern that a jury might be confused by the claims and for purposes of judicial economy. Although the court agreed to hold a bench trial, Ducheneaux demanded a jury trial. The court granted the Estate's motion to consolidate and scheduled a jury trial.

[¶13.] Between September 21, 2016, and October 3, 2016, the circuit court held a ten-day jury trial. Numerous witnesses testified, including Daughters. Daughters had previously averred in her four affidavits filed on December 29, 2011,

that she had either witnessed Wayne execute the alleged holographic wills or that she believed they were in his handwriting. Daughters had also averred that she believed him to be competent at the time of their drafting. However, Daughters had later filed an affidavit dated March 14, 2016, explaining errors made in her previous affidavits. At trial, Daughters testified that her affidavits were mistaken and that she did not witness Wayne sign the writing dated July 16. Daughters also testified that her understanding of competency did not reflect the legal meaning of the word. Further, Daughters claimed that she was not familiar with her father's handwriting aside from his signature. As to the August 23 writing, Daughters testified that she was performing yard work outside while Wayne allegedly penned the document.

[¶14.] At the conclusion of the evidence, the circuit court instructed the jury and provided it with a special-verdict form containing twenty interrogatories. The jury returned a verdict awarding the Estate $200,000 in general damages and $80,000 in punitive damages. Under the category of general damages, the jury awarded $96,000 plus interest for the home quarter and $30,000 for the pickup truck. The jury presumably awarded the remaining $74,000 for rent collected by Ducheneaux while he possessed the land. The jury also invalidated the deed transferring the home quarter to Ducheneaux, finding that not only was Wayne incompetent to execute the deed but that the deed was "the product of fraud, duress, mistake of fact and undue influence." The parties filed post-verdict motions. Because the deed had been invalidated, the court entered an order "exercis[ing] its equitable power to return the property to [the Estate] and, through remittitur,

-6-

reduc[ing] the damage award by the $96,000," the amount the jury awarded for the value of the home quarter.

[¶15.]     On December 14, 2016, Ducheneaux filed a notice of appeal from the jury's verdict and the court's remittitur.  On December 19, Ducheneaux filed a Chapter 13 bankruptcy petition, triggering the automatic stay provisions of 11 U.S.C. § 362.[3]  That same day, the court held a post-trial hearing and determined that title of the home quarter should nevertheless be conveyed to the Estate.  On December 28, the court entered an order divesting Ducheneaux of title to the home quarter and transferring it to the Estate.

[¶16.]     Ducheneaux appeals, raising ten issues that we consolidate as follows:

1.     Whether the circuit court possessed subject-matter jurisdiction and authority to adjudicate disposition of nontrust property.

2.     Whether the circuit court erred by not granting Ducheneaux summary judgment.

3.     Whether the circuit court erred by consolidating the probate and civil cases.

4.     Whether Ducheneaux should be granted a new trial.

5.     Whether the circuit court erred in awarding attorney fees.

**Analysis and Decision**

1.     Whether the circuit court possessed subject-matter jurisdiction and authority to adjudicate disposition of nontrust property.

[¶17.]     Ducheneaux argues that only Indian tribes and the federal government possess jurisdiction over Indian probate matters.  Because the

---

3.     On January 4, 2018, the United States Bankruptcy Court for the District of South Dakota issued an order modifying the automatic stay to enable this Court to issue its decision.

Department of the Interior already probated Wayne's trust property, Ducheneaux argues that principles of federal preemption, res judicata, and collateral estoppel bar further litigation in state court. In its decision, the Department of the Interior disapproved the holographic will dated August 23, 2011, finding that it did not meet the attestation requirements outlined in 25 C.F.R. § 15.4. The Estate did not appeal from the Department's decision, and Ducheneaux contends that the Estate is precluded from litigating the validity of the wills in state-court proceedings.

[¶18.] Challenges to a court's subject-matter jurisdiction are reviewed de novo. *Ducheneaux*, 2015 S.D. 11, ¶ 7, 861 N.W.2d at 521. Therefore, we give no deference to the circuit court's conclusions of law. *Id.* "Because 'subject matter jurisdiction is conferred solely by constitutional or statutory provisions, it can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ.'" *Id.* (quoting *Cable v. Union Cty. Bd. of Cty. Comm'rs*, 2009 S.D. 59, ¶ 19, 769 N.W.2d 817, 825).

[¶19.] In the parties' first appeal to this Court in *Ducheneaux*, we observed that Congress established a barrier to state jurisdiction over Indian property held in trust by the United States. 2015 S.D. 11, ¶ 12, 861 N.W.2d at 523-24. We held that even if the circuit court possessed personal jurisdiction over Ducheneaux, it could not compel him to make application to the Bureau of Indian Affairs to return the two quarters of trust land to the Estate. *Id.* ¶ 20, 861 N.W.2d at 527. Thus, while a trial on the merits "would not be an attempt to adjudicate the *ownership* of Indian trust land, it would violate [28 U.S.C. § 1360(b)] by virtue of necessarily adjudicating the *right to possession* of land held in trust by the United States." *Id.*

[¶20.] However, the United States lacks an interest in property not held in federal trust. *See In re Estate of Flaws*, 2016 S.D. 60, ¶¶ 25-26, 885 N.W.2d 336, 344-45. The present dispute concerns a quarter section of fee land that was owned by Wayne. Ducheneaux cites no authority suggesting that states are federally preempted from exercising jurisdiction over such cases. Nevertheless, Ducheneaux argues that if the federal government possesses jurisdiction over only trust land while the state court holds jurisdiction over fee land, multiple probates would be required. Such a result, Ducheneaux contends, could lead to potentially inconsistent results, a waste of judicial resources, and a violation of sovereignty and the doctrine of res judicata.

[¶21.] Although the bifurcation of property in this manner may lead to some inefficiency, as we explained in *Flaws*, "there is no evidence that Congress intended to control probates of Indian estates involving non-trust land." *Id.* ¶ 27, 885 N.W.2d at 345 (citing 25 U.S.C. § 2206 (2012)); *see also* 25 C.F.R. § 15.10(b)(1) ("[The Secretary of Interior] will not probate . . . real or personal property other than trust or restricted land or trust personalty owned by the decedent at the time of death . . . .").[4] Res judicata also does not apply. "Res judicata consists of two preclusion concepts: issue preclusion and claim preclusion." *Estate of Johnson ex rel. Johnson v. Weber*, 2017 S.D. 36, ¶ 41, 898 N.W.2d 718, 733. With respect to issue preclusion, we cannot say the issue decided in the prior adjudication was identical to the one

---

4.      Indeed, the Department of the Interior takes the position that nontrust property must be handled separately by another court, such as a state court. *See* U.S. Dep't of the Interior, *Indian Probate and Probate-Type Appeals*, https://www.doi.gov/oha/organization/ibia/Indian-Probate-and-Probate-Type-Appeals (last visited Feb. 16, 2018).

presented in the current action. *See Hamilton v. Sommers*, 2014 S.D. 76, ¶ 34, 855 N.W.2d 855, 866 (outlining the elements of collateral estoppel). The Department determined which will controlled under federal law to probate trust property, ultimately deciding that the alleged holographic wills failed to meet the requirements of 25 C.F.R. § 15.4. The circuit-court litigation concerned how nontrust property should be probated under South Dakota law. Further, claim preclusion does not apply because the Department could not and would not handle nontrust property; thus, the case could not "have been advanced in an earlier suit." *Johnson*, 2017 S.D. 36, ¶ 41, 898 N.W.2d at 733. Therefore, neither federal preemption nor principles of res judicata apply.

> 2. Whether the circuit court erred by not granting Ducheneaux summary judgment.

[¶22.] Ducheneaux claims that the circuit court erred in denying his motion for summary judgment on the issue of the validity of the holographic wills. "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Nicolay v. Stukel*, 2017 S.D. 45, ¶ 16, 900 N.W.2d 71, 77. We review evidence "most favorably to the nonmoving party and resolve reasonable doubts against the moving party." *Id.* ¶ 16, 900 N.W.2d at 78. "Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant." *Citibank S.D., N.A. v. Schmidt*, 2008 S.D. 1, ¶ 14, 744 N.W.2d 829, 834. However, a party adverse to summary judgment

"may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." SDCL 15-6-56(e).

[¶23.]      Ducheneaux argues there was no dispute about genuine issues of material fact, highlighting alleged judicial admissions made by Daughters. Ducheneaux observes that Daughters filed four affidavits in support of her petition for formal probate. In the affidavits, Daughters alleged that she personally witnessed Wayne sign three of the writings, that she believed them all to be in his handwriting, and that she believed him to be competent. Ducheneaux contends that these affidavits constitute pleadings and thus judicial admissions. *See Tunender v. Minnaert*, 1997 S.D. 62, ¶ 35, 563 N.W.2d 849, 856 (Sabers, J., dissenting) (observing that statements made in pleadings may constitute judicial admissions). By making such admissions, Ducheneaux claims that Daughters—and thereby, the Estate—waived any arguments about undue influence or competency.

[¶24.]      "A judicial admission is a formal act of a party or his attorney in court, dispensing with proof of a fact claimed to be true, and is used as a substitute for legal evidence at the trial." *Zahn v. Musick*, 2000 S.D. 26, ¶ 27, 605 N.W.2d 823, 829. "An admission is 'limited to matters of fact which would otherwise require evidentiary proof,' and cannot be based upon *personal opinion* or legal theory." *Id.* (emphasis added) (quoting *Tunender*, 1997 S.D. 62, ¶ 21, 563 N.W.2d at 853). In her affidavits, Daughters claimed that she witnessed Wayne sign the July 16 and August 23 writings and that she "believe[d] that . . . [Wayne] was competent to execute a will" at those times; that she was familiar with and believed it was

Wayne's handwriting and signature on the writing dated August 2; and that she witnessed Wayne sign the August 11 writing. While some of these statements are inconsistent with her testimony at trial, Daughters's stated belief—i.e., her personal opinion—that Wayne could competently draft a will on July 16 and August 23 does not constitute a judicial admission. *See id.* These averments might serve as evidence, but they are not dispositive.

[¶25.] Further, our review of the record reveals a number of genuine issues of material fact. SDCL 29A-2-502(a) provides that "[a] will is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting." However, determining "whether the writing complies with the statutory requirements for a holographic will" is only the first step of the analysis. *In re Estate of Serbousek*, 2008 S.D. 46, ¶ 3, 751 N.W.2d 718, 719. We must also "analyze whether the writing was executed with testamentary intent and demonstrated testamentary character." *Id.* Doing so requires examination of "any extraneous circumstances bearing upon the question of intention." *Id.* (emphasis omitted). The Estate's pretrial evidence calls into question Wayne's testamentary intent and the testamentary character of the writings. This includes, for example, medical evidence and testimony regarding Wayne's state of mind as well as apparent contradictions in the writings themselves suggesting lack of competence. For example, Wayne's August 23, 2011 writing references five quarters of land when Wayne purportedly transferred three to Ducheneaux just weeks before. Given these contested issues, the circuit court did not err in denying Ducheneaux's motion for summary judgment.

> 3. Whether the circuit court erred by consolidating the probate and civil cases.

[¶26.] Ducheneaux argues the circuit court failed to consider the issue of prejudice in granting the Estate's motion to consolidate. Ducheneaux contends he suffered substantial prejudice because the outcome of the probate case would determine who the personal representative should be. However, by consolidating it with the civil action—which was brought by the court-appointed personal representative of the Estate—Ducheneaux argues that the circuit court effectively rendered his claims illusory before the jury.

[¶27.] "The denial or grant of a motion to consolidate suits is reviewed under an abuse of discretion standard." *Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 35, 612 N.W.2d 600, 609. A court abuses its discretion by making "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Purcell v. Begnaud*, 2017 S.D. 23, ¶ 6, 895 N.W.2d 346, 348-349. "The 'mere possibility of some prejudice does not justify separate trials where such prejudice is not substantial and there are strong countervailing considerations of economy.'" *Landstrom v. Shaver*, 1997 S.D. 25, ¶ 28, 561 N.W.2d 1, 6 (quoting *Tri-R Sys., Ltd. v. Friedman & Son, Inc.*, 94 F.R.D. 726, 728 (D. Colo. 1982)).

[¶28.] SDCL 15-6-42(a) permits consolidation "[w]hen actions involving a common question of law or fact are pending before the court . . . to avoid unnecessary costs or delay." Despite consolidation, the trial here lasted ten days and involved more than a dozen witnesses and a record spanning thousands of pages. Both cases examined common questions of law and fact and would have

-13-

involved duplicative testimony, including from expert witnesses. For example, the issues of Wayne's competency and whether Ducheneaux exercised undue influence bear directly on both the probate and civil claims. The court recognized that prolonged litigation would completely drain the Estate's resources, and we cannot say that it abused its discretion by averting two costly and substantially similar trials. *See Martinmaas*, 2000 S.D. 85, ¶ 41, 612 N.W.2d at 610.

[¶29.]     Further, Ducheneaux suffered minimal or no prejudice. Although the court denied the Estate's first, largely identical motion to consolidate, Ducheneaux ignores the fact that at the second hearing, the court considered consolidating the cases as part of a bench trial, which would have eliminated the alleged issue of jury confusion. However, Ducheneaux insisted on a jury trial. To that end, the court submitted a special-verdict form and interrogatories as well as proper jury instructions to minimize prejudice. *See Karst v. Shur-Co.*, 2016 S.D. 35, ¶ 33, 878 N.W.2d 604, 618 ("Juries are presumed to follow instructions of the circuit court."); *Landstrom*, 1997 S.D. 25, ¶ 32, 561 N.W.2d at 7. Additionally, although the person nominated to be personal representative in a probated will receives priority, SDCL 29A-3-203, the issue is ultimately secondary: Ducheneaux's claim that he should be personal representative first demands a determination about whether the alleged August 23, 2011 holographic will was valid. This question necessarily involves an inquiry into issues like undue influence, fraud, deceit, and conversion, which are claims common to both cases. Therefore, the circuit court did not err in consolidating the actions.

4.     Whether Ducheneaux should be granted a new trial.

[¶30.] At the close of trial, Ducheneaux moved for a new trial on the grounds of irregularity in the proceedings, excessive damages, insufficiency of the evidence, and surprise.[5] The circuit court denied Ducheneaux's motion, and Ducheneaux reiterates his arguments on appeal. SDCL 15-6-59(a) provides, in part:

> A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:
>
> > (1) Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;
> >
> > . . . .
> >
> > (3) Accident or surprise which ordinary prudence could not have guarded against;
> >
> > . . . .
> >
> > (5) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;
> >
> > (6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law;
> >
> > (7) Error of law occurring at the trial; provided, that in the case of claim of error, admission, rejection of evidence, or instructions to the jury or failure of the court to make a finding or conclusion upon a material issue which had not been proposed or requested, it must be based upon an objection, offer of proof or a motion to strike.

[¶31.] Ducheneaux argues that several irregularities occurred, including: the court's decision to apply remittitur and compel Ducheneaux to transfer the home

---

5. "The abuse of discretion standard is also utilized 'when reviewing a trial court's denial of a motion for a new trial.'" *Harmon v. Washburn*, 2008 S.D. 42, ¶ 10, 751 N.W.2d 297, 300 (quoting *Christenson v. Bergeson*, 2004 S.D. 113, ¶ 13, 688 N.W.2d 421, 426).

quarter back to the Estate;[6] the court's refusal to admit the transcript of the guardianship proceeding into evidence; and the court's decision to permit allegedly improper references about the two tribal quarters during trial.

[¶32.] With respect to remittitur and the exercise of the court's equitable powers, Ducheneaux argues the court nullified the jury's verdict and substituted its own judgment by ordering the return of the home quarter to the Estate and by reducing the general damages by $96,000. This Court has said that a "trial court cannot substitute its verdict for the verdict of the jury." *Ebert v. Fort Pierre Moose Lodge No. 1813*, 312 N.W.2d 119, 122 (S.D. 1981). However, Article VI, Section 6 of the South Dakota Constitution guarantees a right to a jury trial only in cases at law. Absent an agreement by the parties "to a binding jury in an equitable action, the jury verdict is advisory." *Granite Buick GMC, Inc. v. Ray*, 2014 S.D. 78, ¶ 7, 856 N.W.2d 799, 802. Ducheneaux contends that the parties agreed that the jury's verdict would be binding and that the jury only awarded monetary damages. Yet as the Estate observes, a jury cannot provide an equitable remedy. *See id.* ¶ 10, 856 N.W.2d at 803. Moreover, the court exercised its equitable powers pursuant to and consistent with the jury's determination that the deed transferring the home quarter was void.

[¶33.] Ducheneaux further argues that under the election-of-remedies doctrine, the Estate could receive only monetary damages for the value of the home quarter. In making this argument, Ducheneaux mistakenly claims that the Estate

---

6. Challenges to an award of an equitable remedy are reviewed for an abuse of discretion. *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 17, 736 N.W.2d 824, 832.

requested only a monetary verdict. The Estate consistently requested—including in its complaint and during opening argument—that the transfers be set aside and that the home quarter be returned to the Estate. Counsel for Daughters did ask the jury for monetary damages during closing argument because the "home quarter was gone," having been deeded to Ducheneaux. But as counsel explained at the post-trial motion hearing on November 14, 2016, he made this statement because the jury was not entitled to grant him equitable relief by returning the land. Once the jury determined the deed transferring the home quarter was invalid, the Estate requested equitable relief from the court by remittitur.

[¶34.]     While a party may not seek "double recovery," it can request remedies in the alternative. *See Ripple v. Wold*, 1996 S.D. 68, ¶ 7, 549 N.W.2d 673, 674-75. "The purpose of the election of remedies doctrine is not to block recourse to any particular remedy but to prevent duplicate recovery for a single wrong." *Id.* Because the circuit court remitted the $96,000 the jury awarded in monetary damages for the home quarter, no double recovery occurred. Although the court acknowledged that the home quarter might be worth more than $96,000, we cannot say—given the jury's verdict invalidating the deed—that the court erred in ordering Ducheneaux to return the land.

[¶35.]     Ducheneaux next argues the circuit court erred when it refused to allow him to testify as to the court's prior ruling in the guardianship proceeding. On the sixth day of trial, Ducheneaux filed a motion for recusal or, in the alternative, to admit into evidence the transcript from the August 24, 2011 guardianship hearing. The court denied the motion. During direct examination of

Ducheneaux, Ducheneaux's counsel asked whether "there [were] comments made by the [c]ourt at the August 24th, 2011 guardianship?" While the court permitted Ducheneaux to respond "yes," it did not allow him to repeat what the court said. At the guardianship proceeding, the court appointed Ducheneaux as Wayne's guardian, finding that Wayne displayed sufficient cognitive ability to express his desire that he reside with Ducheneaux. According to Ducheneaux, by disallowing the transcript and his testimony about the court's previous holding, "[the judge] made himself the only witness to that evidence." This, Ducheneaux contends, required the judge to recuse himself from the current action so that he could testify as to Wayne's competence. *See* SDCL 19-19-605 (providing that a presiding judge may not testify at trial).

[¶36.]		A judge's decision to recuse himself is in part discretionary. *Marko v. Marko*, 2012 S.D. 54, ¶ 18, 816 N.W.2d 820, 826. However, once a judge determines that "the facts and circumstances fit within the disqualifying criteria," recusal is mandatory. *Id.* "Canon 3E(1) provides that 'a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances' of (a) 'personal bias or prejudice' or 'personal knowledge,' (b) prior service as a lawyer in the matter, (c) economic interest, and (d) close personal relationship of relatives or parties to a proceeding." *Id.* ¶ 19 (quoting SDCL ch. 16-2 app. Canon 3E(1)). On the other hand, if the facts and circumstances do not fit within the disqualifying criteria, a judge has an equally strong duty not to recuse. *Id.* ¶ 21.

[¶37.] Here, none of the relevant criteria apply. "[E]ven in cases where judges have had prior judicial exposure to parties, without more, . . . this is insufficient to show that impartiality might reasonably be questioned." *Id.* ¶ 23, 816 N.W.2d at 827. Further, the Estate notes that Ducheneaux failed to disclose during discovery and in response to the pretrial order that he either intended to use the statements as evidence or call the judge as a witness. Ducheneaux does not respond to this argument, and we conclude that the circuit court did not err.

[¶38.] Ducheneaux further claims the "jury was inundated with evidence regarding the two tribal quarters," including their value and the amount of rent owed. Ducheneaux claims that despite this Court's holding in *Ducheneaux* that trust property was not within the jurisdiction of the circuit court, the circuit court here improperly allowed the Estate to submit evidence regarding these parcels. The trust parcels in Ducheneaux's possession were valued at a total of $238,057 and produced rental income. Ducheneaux claims the associated monetary figures excited the jury's passions, leading to an excessive general-damages award as well as an award for punitive damages to redress the loss of the tribal quarters to the Estate in violation of SDCL 15-6-59(a)(5). Ducheneaux also claims that this constituted an error of law under SDCL 15-6-59(a)(7).

[¶39.] However, "the amount of damages to be awarded 'is peculiarly a question for the jury,'" and "the trial court is best able to judge whether the damages awarded by a jury are the product of passion or prejudice." *Maryott v. First Nat. Bank of Eden*, 2001 S.D. 43, ¶ 26, 624 N.W.2d 96, 105 (quoting *Berry v. Risdall*, 1998 S.D. 18, ¶ 10, 576 N.W.2d 1, 4). While this Court held in *Ducheneaux*

#28068

that a state court could not adjudicate ownership of trust property or interfere with the interests of the United States, 2015 S.D. 11, ¶ 20, 861 N.W.2d at 527, here it is apparent that references to the tribal quarters were made only to provide the jury with necessary context. It would be extraordinarily difficult to refer to the holographic writings, Wayne's assets, Ducheneaux's net worth, and issues of undue influence and Wayne's competency without making mention of these parcels. The jury received proper instructions that any information about the trust quarters was "presented [only] to provide a complete picture of the events that are at issue" and that "ownership of the tribal land is not an issue to be considered in this case." Ducheneaux's speculation that the jury award encompassed damages for the tribal quarters is unfounded, and we presume the jury followed the instructions. *Karst*, 2016 S.D. 35, ¶ 33, 878 N.W.2d at 618.

[¶40.]     Ducheneaux also claims that the award of $74,000, presumptively for rent, was excessive. Ducheneaux highlights the following colloquy from his testimony:

> **Q.** Well, you must have some sort of idea how much you get in a check each month. Do you get $25,000 a year?
>
> **A.** I think 24 or something like that maybe *between the three*.
>
> **Q.** About $24,000 a year in rental income?
>
> **A.** Approximately, I believe.
>
> . . . .
>
> **Q.** When is the first year you started receiving rental income off of this real estate?
>
> **A.** When I filed the paperwork for the home quarter is when that started and the other two tribal quarters, whatever dates those were. I believe it was '11 or '12.
>
> **Q.** So you're thinking it was 2011 or 2012?
>
> **A.** Somewhere around there.

**Q.** So is it your testimony in 2011 you would have received $24,000 in rental income off of this real estate?

**A.** Right.

**Q.** And every year since then you've been receiving approximately $24,000 in rental income?

**A.** Right.

(Emphasis added.)

[¶41.] Ducheneaux interprets the exchange to mean the land only earned $8,000 in rent per year (focusing on the words "between the three"). Ducheneaux claimed to receive rent for only four-and-a-half years, totaling $36,000 in rent. Ducheneaux also observes that the Estate's personal representative testified that the Estate leased land for approximately $12,000 a year. Additionally, Ducheneaux claims that it was improper for the jury to award both interest on the home quarter and compensation for lost rents during that same period, citing *Rensch v. Riddle's Diamonds of Rapid City, Inc.*, 393 N.W.2d 269, 274 (S.D. 1986), and SDCL 21-3-3.

[¶42.] The Estate counters that although the deed transferring the home quarter to Ducheneaux was not recorded until 2012, he came into possession of the land in 2011, thus holding it for five-and-a-half years. The Estate argues without conceding that even if $12,000 a year is the proper figure, this rate amounts to more than $68,000 in lost rents.[7] The Estate also contends that a jury could reasonably interpret Ducheneaux's statements to mean that he earned $24,000 per year from the home quarter. During closing argument, the Estate's counsel suggested the Estate lost $132,000 in rent based on this calculation. Additionally, the Estate

---

7.    According to Exhibit 36-A, which details a final inventory of the Estate, a lessee paid $12,442 in rent in 2012. The Estate multiplies this figure by 5.5, totaling $68,431.

observes that these rent figures reflect agricultural use only and do not "include any rent for hunting, for use of the structures on the land, or for the pickup truck." Finally, the Estate points to Exhibit D-3, which indicated that the insurance company "held back" $11,355 in depreciation/replacement costs as a result of the flood claim on the home quarter.

[¶43.]     We agree with the Estate that there was more than sufficient evidence in the record to support the remaining $74,000 of the jury's verdict. The jury could interpret Ducheneaux's statements to mean he received $24,000 per year, arriving at a figure well in excess of $74,000. Alternatively, the evidence supported a figure of over $12,000 in rentals per year, which accounting for factors like inflation, could similarly support such an award. Rent aside, the evidence also indicated that the Estate suffered other general damages, e.g., on the insurance claim and from the guns Wayne owned that Ducheneaux never returned. Further, even assuming Ducheneaux is correct that returning the land and an award of damages would be duplicative, here the court remitted the $96,000 and interest awarded for the home quarter. We therefore find sufficient evidence to support the jury's verdict and no error of law.

[¶44.]     Ducheneaux next claims surprise from Daughters's testimony. According to Ducheneaux, the defense expected Daughters's testimony to be consistent with her statements in the affidavits. Ducheneaux claims Daughters's contradictory statements on the stand caught him off guard. However, Daughters had submitted an affidavit dated March 14, 2016, months before trial, explaining the mistakes she made in executing her previous affidavits, and this updated

affidavit is consistent with her testimony at trial. As the circuit court explained, "the positions of the parties . . . had been staked out at least dating back to probably six months prior to trial," and Ducheneaux cannot now claim surprise. *See Fullmer v. State Farm Ins. Co.*, 498 N.W.2d 357, 361-62 (S.D. 1993) (affirming vacation of judgment and grant of new trial due to "newly discovered evidence" as a result of witness radically changing testimony provided in a deposition two weeks before the first trial on a bifurcated issue and defendants' failure to diligently inform plaintiff of the change in opinion before the second trial).

[¶45.]      Ducheneaux finally argues that there was insufficient evidence to support the verdict. "This Court will uphold a jury verdict 'if the jury's verdict can be explained with reference to the evidence,' viewing the evidence in a light most favorable to the verdict." *Lenards v. DeBoer*, 2015 S.D. 49, ¶ 10, 865 N.W.2d 867, 870. "In considering the verdict of a jury in any particular case, to determine whether or not it is sustained by the evidence, we are not to speculate or query how we would have viewed the evidence and testimony . . . ." *Biegler v. Am. Fam. Mut. Ins. Co.*, 2001 S.D. 13, ¶ 32, 621 N.W.2d 592, 602. "[I]f there is competent and substantial evidence to support the verdict, it must be upheld." *Rogen v. Monson*, 2000 S.D. 51, ¶ 18, 609 N.W.2d 456, 461. Although Ducheneaux argues that there was no evidence to suggest Ducheneaux exerted any undue influence over Wayne to support the jury's award of $30,000 for the truck, Ducheneaux couches this argument in part in his claims about judicial admissions. As explained above, we reject this argument, *supra* ¶ 24, and conclude that sufficient evidence existed to support the verdict and that the court did not err by refusing to grant a new trial.

**Conclusion**

[¶46.] Neither federal preemption nor principles of res judicata barred jurisdiction. The circuit court did not err in refusing to grant Ducheneaux's motion for summary judgment because many genuine issues of material fact existed. Further, the court did not err in consolidating the probate and civil actions: the cases involved numerous questions of law and fact common to both, and principles of judicial economy outweighed the minimal prejudice to Ducheneaux. The court also properly denied Ducheneaux's motion for a new trial.

[¶47.] Affirmed.

[¶48.] GILBERTSON, Chief Justice, ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur on Issues One through Four.

[¶49.] JENSEN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.

**[¶50.]** **WILBUR, Retired Justice, writing for the Court on Issue 5**

5. Whether the circuit court erred in awarding attorney fees.

[¶51.] In separate motions, Brad Schreiber as counsel for the Estate and Jack Gunvordahl as personal representative of the Estate requested an award of attorney fees and taxation of costs and disbursements. They relied on SDCL 29A-3-720, SDCL 15-6-54(d), SDCL 15-17-37, and SDCL 15-17-38 as authority. The circuit court granted both motions and ordered Ducheneaux to pay the Estate $45,000 in attorney fees. The circuit court did not cite authority for assessing the fees against Ducheneaux rather than from the Estate. The court ordered Ducheneaux to pay the fees, finding "that the claims [the Estate and personal representative] prosecuted resulted in a substantial benefit to the Estate" and "that

-24-

the interests of justice dictate an award of attorney's fees in these cases[.]" The circuit court also concluded that "as the prevailing party, the Estate should be awarded costs and disbursements[.]"

[¶52.] On appeal, Ducheneaux challenges the circuit court's authority to order him to pay attorney fees to the Estate. Under SDCL 15-6-54(d)(2)(B), a motion for an award of attorney's fees "must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award[.]" According to the Estate and personal representative, SDCL 29A-3-720 authorized an award of fees from Ducheneaux.

[¶53.] In *In re Estate of Bickel*, we recognized that "[u]nder SDCL 29A-3-720, the person nominated as personal representative may recover necessary expenses and disbursements *from the estate* including reasonable attorney's fees for defending any proceeding in good faith." 2016 S.D. 28, ¶ 49, 879 N.W.2d 741, 755 (emphasis added). SDCL 29A-3-720 also authorizes the court to "award necessary expenses and disbursements, including reasonable attorney's fees, to any person who prosecuted or defended an action that resulted in a substantial benefit to the estate."

[¶54.] By its plain language, SDCL 29A-3-720 did not permit the circuit court to order Ducheneaux to pay the Estate's and personal representative's attorney fees. Indeed, in *Estate of Card v. Card*, we recognized that "[t]he plain and unambiguous language of this statute authorizes an award of attorney's fees *from the estate*[.]" 2016 S.D. 4, ¶ 19, 874 N.W.2d 86, 92 (emphasis added) (citing *In re Guardianship of G.T.C.*, 2014 S.D. 65, ¶ 8, 854 N.W.2d 343, 345 ("interpreting

similar statutory language and ruling that 'the attorney for the guardianship and conservatorship was entitled to her fees from the estate rather than guardians and conservators personally'")).

[¶55.]        Nevertheless, the Estate and personal representative also relied on SDCL 15-17-38.  Under SDCL 15-17-38, "[t]he compensation of attorneys and counselors at law for services rendered in civil and criminal actions and special proceedings is left to the agreement, express or implied, of the parties."  No such agreement for an award of fees exists in this case.  However, SDCL 15-17-38 also provides that "[t]he court may award attorneys' fees from trusts administered through the court as well as in probate and guardianship proceedings."  From the language of this phrase, it is unclear whether the Legislature meant to permit an award of fees *against* an individual in probate proceedings.

[¶56.]        In *In re Estate of Perry*, we wrote that "SDCL 15-17-38 gives the trial court the authority to grant attorney fees in probate and guardianship proceedings." 1998 S.D. 85, ¶ 36, 582 N.W.2d 29, 36.  We, however, were not asked to specifically interpret whether SDCL 15-17-38 authorizes an assessment of fees *against* an individual rather than *from* the estate.  We simply assumed fees were awardable so long as the services were beneficial to the estate.  Thus, *Perry* does not provide guidance in interpreting SDCL 15-17-38.

[¶57.]        More importantly, "in considering whether an award of attorney fees is authorized by statute, 'this Court has rigorously followed the rule that authority to assess attorney fees may not be implied, but must rest upon a clear legislative grant of power.'" *Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 32, 827 N.W.2d 55, 67

(quoting *In re Estate of O'Keefe*, 1998 S.D. 92, ¶ 17, 583 N.W.2d 138, 142). Here, SDCL 15-17-38 "is insufficiently specific" to permit the circuit court's award of attorney fees against Ducheneaux. *See Schuldies v. Millar*, 1996 S.D. 120, ¶ 38, 555 N.W.2d 90, 100. First, the plain language of SDCL 15-17-38 does not make clear that the Legislature meant to permit an award of fees *against* an individual in probate proceedings. Second, the more specific statutes (SDCL 29A-3-720 and SDCL 29A-5-116) unambiguously provide that an award of fees comes *from an estate*.

[¶58.] A review of legislative history also fails to evince clear legislative authorization for an award of attorney fees against an individual in probate proceedings. *See In re Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 886 (S.D. 1984) (utilizing our rules of statutory construction to discover legislative intent). SDCL 15-17-7 preceded SDCL 15-17-38, and provided:

> The court may allow attorneys' fees as costs for or against any party to an action in the cases if it is specifically provided by statute, but nothing herein abridges the power of the court to order payment of attorneys' fees in all cases of divorce annulment of marriage, determination of paternity or for separate maintenance and alimony, if the allowance of the same before or after judgment is warranted. *Nor does anything herein abridge the power of the court to allow attorneys' fees from trusts administered through the court.*

(Emphasis added.) In 1992, the Legislature repealed SDCL 15-17-7 and enacted SDCL 15-17-38 in its place.

[¶59.] Today, SDCL 15-17-38 is similar to its predecessor in many respects. One significant difference exists, however. Instead of the phrase—"Nor does anything herein abridge the power of the court to allow attorneys' fees *from* trusts

administered through the court"—SDCL 15-17-38 provides that "[t]he court may award attorneys' fees *from trusts administered* through the court *as well as in* probate and guardianship proceedings." *Id.* (emphasis added). Although the Legislature did not use the phrase "from trusts administered" in reference to "probate and guardianship proceedings," we conclude that SDCL 15-17-38 does not create a clear legislative grant of power to a court to assess fees against an individual in probate proceedings.

[¶60.] Because the circuit court did not have statutory authority to assess attorney fees against Ducheneaux, the court erred when it ordered Ducheneaux to pay the Estate's and personal representative's attorney fees. We reverse the circuit court's order assessing attorney fees against Ducheneaux and remand for the court to consider the Estate's and personal representative's requests for fees consistent with this opinion.

[¶61.] Dawn Daughters, as an interested person, filed a motion and supporting affidavit requesting $11,420.70 in appellate attorney fees. SDCL 15-26A-87.3. She filed a motion for attorney fees at the circuit court level, and the circuit court awarded Daughters $50,865.31 in fees and costs from the Estate. The court "found that the claims that she and her counsel prosecuted and defended resulted in a substantial benefit to the Decedent's Estate[.]" On appeal, Daughters relies on SDCL 29A-3-720 and SDCL 15-17-38 and attests that the fees were related to the prosecution and defense of this case on appeal and that the services were beneficial to the Estate on appeal. We award Daughters $11,420.70 in appellate attorney fees from the Estate.

[¶62.]        Reversed and remanded.

[¶63.]        ZINTER and SEVERSON, Justices, concur on Issue Five.

[¶64.]        GILBERTSON, Chief Justice, and KERN, Justice, concur in part and dissent in part on Issue Five.

KERN, Justice (concurring in part and dissenting in part on Issue Five).

[¶65.]        I concur with the majority that Daughters should be awarded appellate attorney fees from the Estate.  However, because I interpret SDCL 15-17-38 to mean attorney fees can be assessed against a party in a probate proceeding, with respect to the Estate's request for fees, I respectfully dissent in part.  SDCL 15-17-38 codifies the American Rule and provides in part:

> The compensation of attorneys and counselors at law for services rendered in civil . . . actions . . . is left to the agreement, express or implied, of the parties.  However, attorneys' fees may be taxed as disbursements if allowed by specific statute.  The court, if appropriate, in the interests of justice, may award payment of attorneys' fees in all cases of divorce, annulment of marriage, determination of paternity, custody, visitation, separate maintenance, support, or alimony.  The court may award the fees before or after judgment or order.  The court may award attorneys' fees from trusts administered through the court *as well as in probate and guardianship proceedings.*

(Emphasis added.)

[¶66.]        The majority observes that the statute did not originally include the language "as well as in probate and guardianship proceedings" after the words "from trusts administered through the court."  *Supra* ¶ 59.  It further acknowledges that the phrase "from trusts administered" does not directly precede the words "in probate and guardianship proceedings."  *See id.*  Nevertheless, it inserts those words in arriving at its conclusion that "SDCL 15-17-38 does not create a clear

legislative grant of power to a court to assess fees against an individual in probate proceedings." *Id.*

[¶67.] However, we determine legislative intent "from what the [L]egislature said, rather than from what we or others think it should have said." *Clark Cty. v. Sioux Equip. Corp.*, 2008 S.D. 60, ¶ 28, 753 N.W.2d 406, 417. This is because "[i]t is always safer not to add to or subtract from the language of a statute unless imperatively required to make it a rational statute." *Fin-Ag, Inc. v. Pipestone Livestock Auction Mkt., Inc.*, 2008 S.D. 48, ¶ 16, 754 N.W.2d 29, 38. Here, the majority unnecessarily inserts "from trusts administered" before the words "in probate or guardianship proceedings." The majority then claims that the statute lacks specificity because "the plain language of SDCL 15-17-38 does not make clear that the Legislature meant to permit an award of fees *against* an individual in probate proceedings." *Supra* ¶ 57. However, it is unclear why the majority believes this to be the case. If it is because the words "against an individual" do not appear in the sentence ending "in probate and guardianship proceedings," then such an analysis would be equally applicable to the preceding sentence providing that attorney fees may be awarded "in all cases" of divorce, annulment of marriage, and so on. *See* SDCL 15-17-38.

[¶68.] With respect to SDCL 29A-3-720 and SDCL 29A-5-116, these statutes entitle specified individuals to recover from the estate. On the other hand, SDCL 15-17-38 broadly permits all parties to seek attorney fees from the other party. Thus, SDCL 29A-3-720 and SDCL 29A-5-116 serve a separate purpose:

ensuring an alternative source of potential compensation for a smaller pool of persons.

[¶69.] Additionally, the legislative history does not support the majority's view. Both versions of the statute contain the words "from trusts administered through the court." The prior version ended the statute there and did not make any mention of probate or guardianship proceedings. However, in revising the statute, the Legislature appended the language "as well as in probate and guardianship proceedings." The majority's interpretation suggests that the Legislature merely added surplusage in revising the statute. *See Hollman v. S.D. Dep't of Soc. Servs.*, 2015 S.D. 21, ¶ 9, 862 N.W.2d 856, 859 ("We presume the Legislature does not insert surplusage into its enactments."). This is because only courts can administer probate and guardianship proceedings. SDCL ch. 29A-3; SDCL ch. 29A-5. Thus, any trust administered in a probate or guardianship proceeding is necessarily administered through a court. As the first part of the sentence already establishes that attorney fees may be sought "from trusts administered *through the court*," SDCL 15-17-38 (emphasis added), the majority's reading renders the latter part of the sentence redundant.

[¶70.] Because I believe SDCL 15-17-38 can be rationally construed as permitting attorney fees against another party in a probate proceeding without needing to insert language, and because the legislative history better comports with this view, I respectfully dissent in part.

[¶71.] GILBERTSON, Chief Justice, joins this writing.